Case 1:18-cv-08208-VSB

—

### United States District Court
### Southern District of New York

Jessica Wrobleski,

        Plaintiff, Pro Se              18-cv-08208-VSB

    -against-                   **Motion of Opposition**

Little Flower Children and Family Services,
Sheila Johnson, Barbara Simon, New York City,
A.C.S. Commissioner David Hansell, David Usdan
Respondents.

—

I, Jessica Wrobleski, being duly sworn, deposes and says:

1. That I am the plaintiff in the above-captioned case.

2. In this motion I am answering to multiple parties in the above-captioned case matter, who have submitted replies and motions for dismissal.

### A. In Response to Keisha Malphur, Marcia Conyers, Hyacinth Tyson-King's sworn Affidavits

1. Keisha Malphurs was assigned as case planning supervisor from 10-2013 until 12-2015, but then attended to the case in 2019 until present as Director over the supervision and case planning of the case matter of the subject child in the family court system foster system case matter.

2. The Bellevue file has been on the case record of the Family Court proceeding that is a subject of this case, and was made available to the case parties' and their lawyers.

3. The Bellevue record and case lawyers to their privy parties represented that at intake this plaintiff went to Bellevue Hospital with alleged mental health related issues that included: suicidal ideation, psychosis, and self-reported schizophrenia and bipolar.

4. The Bellevue record also indicates that this plaintiff said such was not true and sought to be court ordered released by Mental hygiene Legal Services, that plaintiff was 37 weeks pregnant and due to give birth, that the hearing for this plaintiff's release was not scheduled for

1

approximately 2 weeks where plaintiff withdrew because plaintiff had to give birth. This plaintiff was with pregnancy complications at Bellevue Hospital that additionally required me to stay because of severe iron deficiency anemia that resolved with a blood transfusion scheduled for after delivery that was induced on my due date as planned and coordinated by Bellevue Hospital staff with this plaintiff during involuntary hold. Ultimately the situation worked out and the court hearing for release was disrupted by the need to give birth.

5. That while on the involuntary hold for 15 days this plaintiff was not prescribed any psychiatric medication except as is procedurally assigned to every patient put on an involuntary hold; a chemical restraint drug that was deemed per agitation on the record and was deemed safe to use in the gestation of pregnancy that I was at. BUT was never used on me because I did not warrant such to be used, I did not commit acts of violence towards staff or have a psychotic break requiring such drug to be used on me as is typical in psychiatric wards.

6. That while admitted for a 15 day involuntary hold at Bellevue and per Bellevue's record contents, this plaintiff had no incidents or episodes of mental illness, was deemed to be fully cooperative, worked with the social worker staff to safe discharge planning, and was noted by the consistent, assigned psychiatrist to have displayed no psychosis or affective condition.

7. The upon transfer to the maternity ward and psychiatry per that area, there was no documented incidents or episodes of mental illness in the very detailed frequently tended to Bellevue record, that it was noted that this plaintiff was making good, sound, understanding medical decisions for self and baby, was fully attentive and good in the care of her baby, was extremely upset at ACS being called and their decision because of them not liking the plaintiffs anger and upset demeanor and that aside from the newly assigned psychiatrist who was the subject of the amended petition, stated that he was opposed to this plaintiff leaving with her child and opined diagnoses that he later recanted on 10-2014 trial record in cross-exam by Gary Schults.

8. The petition for removal issued by ACS stated to remove my child because i self reported schizophrenia and bipolar; thereafter, the court had the entire Bellevue record that ACS had access to its contents and still decided to amend using the maternity ward psychiatrist and with complete disregard for the assigned psychiatrist to the 15- day psyche ward daily observations.

9. Various reports from Little Flower Children and Family Services repeatedly cited that the subject-child was removed because Ms. Wrobleski went to Bellevue and self-reported schizophrenia and bipolar.

10. The Permanency Hearing reports issued mostly by Sheila Johnson stated that this plaintiff has schizophrenia, depression, bipolar, and anger problems, which I declare is false information because no mental health service provider on or off the case diagnosed that.

11. Sheila Johnson was informed as was Hyacinth Tyson-King and various other staff that no mental health service provider diagnosed that. **Reference EXHIBIT A. 2016 emails; exchanges, and EXHIBIT B all 2019 emails, exchanges, reports etc (including FTC report) from post-release 9-4-2019 until after TPR conclusion 1-29-2020.**

12. Sheila Johnson's actions of putting that diagnosis in the Permanency Hearing reports had adversely affected my case to be ruled against me always, including in TPR disposition where the judge recited the exact same words as Sheila Johnson, that she relieved herself of fulfilling Social Service Law diligent efforts by stating that this plaintiff has schizophrenia and is in treatment or is not, in the area of the report specified for reporting case planner efforts to the goal of reunification of child custody and what the respondent did or did not do. **Reference EXHIBIT A. Email exchanges of this complaint.**

13. Keisha Malphurs #7 is incorrect, inaccurate as above-mentioned. This plaintiff displayed no mental illness; the intake allegations were also refuted on the same record. This plaintiff was not prescribed any psychiatric medication to take before, during or discharged with after her stay at Bellevue Hospital. Throughout the case, this plaintiff was not prescribed any psychiatric medication to treat severe mental illnesses that ACS and privy parties have alleged about this plaintiff and Little Flower staff under the supervision of Keisha Malphurs was told that this plaintiff I did not meet the criteria for such in phone call that I was present at and in reports from the mental health service providers that release of information was signed to Keisha Malphurs 12-16-2014 per long term service provider that I was in court order compliance to.

14. All case parties and/or their lawyers had access to the Bellevue record that was on the court case ACS case records files. There was briefly an in camera inspection, but i refused that because I had nothing to hide of myself I did nothing wrong and I asked for the lawyer to be relieved who did that and who among many was making decisions without my permission in the case that occurred for over 6 years because of case parties, that has adversely affected the health and well being of this plaintiff and the subject-child. Thus the "in camera" was not affecting the case to my knowledge because I proceeded with permission from the Court's MHS office after completing a competency evaluation 11-28-2013. The assigned counsel was replaced eventually because she did not have the same objectives as I did where she wanted to dwell on in camera and I wanted my son back. **Reference Exhibit C. 11-28-2013 Bryan Stuart report.**

15. #9 of Keisha Malphurs' affidavit is false. While Keisha M. was a supervisor, she was informed of staff behavioral complaints and complaints that her staff was not giving me referrals for programs directly asserted to her and I reported directly to the subsequent case docket in SDNY that I had filed because she did nothing but push for me to have my visits; because I was being refused in the court of Susan Knipps who openly displayed that she did not like that I was granted permission to proceed as Pro Se by the MHS office who approximately 2 months later changed their minds and issued a false report against me that on court record Susan Knipps refused to subpoena my proofs thus I had to have an 18B assigned because of intimidation

3

tactics and other court traps given. **Reference SDNY Docket 13-cv-08736WHP at Pacer.gov files (unable to add directly but am seeking them to be entered as an exhibit to support this section and all other applicable sections)**

16. From 10-2013, I was told by Little Flower CFS case staff to go to PATH single women's shelter because I was an out of state resident of Pennsylvania. That, to cooperate with the service plan I had to be local. Visitation was 3 days a week in 2013 and decreased to 1 day a week 1 hour also during that year.

17. I complained to ACS that after the Service Plan was given, Little Flower CFS staff wasn't giving me referrals to those programs and that I was looking for them online but did not find them locally. Every time I went to ACS, ACS redirected me to tell Little Flower CFS staff. I made various complaints against the agency in motions directly to the Family Court case record who refused to address them. Therefore I put copies of those motions on the SDNY 13-cv-08736WHP record in exhibits showing that I was making efforts and that I wasn't mentally ill and that case parties, above-captioned defendants, privy parties were not doing their procedural job.

18. I moved back to Pennsylvania 2-27-2014, and while Little Flower CFS staff was lying in court saying I assaulted Keisha Malphurs at the foster agency, that I did not want my son, that I was refusing the case plan, I went to Pennsylvania DHS and asked for help. Pennsylvania DHS said they could not work my case with me unless ACS transferred my son and case to them but that they could provide me with all the resources I needed. After I went to a few groups and felt like this wasn't enough, I took my service plan papers back to DHS and got some resources to help me find service plan programs that fit the criteria to what we discussed in the meeting. Criteria that I felt would suffice to be educational and enough to get my son returned to my custody. I reportedly and documentedly began those services 6-2014 and completed them all by 12-16-2014, except for the anger management I was receiving from the intensive outpatient MHS Dialectical behavioral Therapy program that I was in so that I was attending outpatient approximately and up to 3 days a week plus visits 1 day a week if I was not under suspension. **Reference EXHIBIT D. program certificates, parenting class book, 2013 service plan order, (CBS) mhs reports; testing, and DBT certificate and info., DHS card etc.**

19. Subsequently, the case planner was removed from the case and Keisha Malphurs herself had to deal with my case until a case planner was assigned. In that time, Keisha M. gave a referral for parenting class in Brooklyn that did not work out and she was directly involved to know exactly why because when the program facilitator asked me to participate and talk about a topic and I did she did not like what I had to say and caused me to have a panic attack. I walked out of the room and called Keisha Malphurs immediately and told her I can't do this. I have other options, she caused me to have a panic attack in her attitude at me etc. If Keisha M. did not document what I told her exactly what I said then that is not my problem and I should not be penalized for that. In fact I had to call my therapist at the clinic I was attending and tell him I am in a panic attack and it's not going away and they had to talk me through that. NONETHELESS,

4

I completed a 13 week detailed parenting class; I made a book from what I learned and the resource packets given per each class and then I gave a copy of that to the foster agency, lawyers assigned to me to present to the court, with all my certificates of SUCCESSFUL completion (because if I did not complete the programs successfully I likely would not have received a certificate with approval from those staff directly given upon contact). **Reference EXHIBIT D.**

20. Before Jennifer Pollissaint was removed as the first case planner to the family court case, she created a hostile environment and then tried to blame that on me when I did nothing but try to visit and bond with my child. There was multiple incidents that I reported of the behaviors of the foster agency staff who then lied to the court record to say, without detail and without substantiating even by reporting such timely so an investigation by law enforcement or court directed could occur like when she lied and said I punched Keisha M. in the face at the foster agency, to the court record in approximately 12-2013 or 1-2014 that I immediately said subpoena the lobby camera coverage I did not hit her or act violently. Another was that the security staff screamed in my face because I was waiting for Crystal to come supervise my visit and he said I was disrespectful for not obeying Jennifer that Keisha M. herself had to immediately run down to the lobby and stop Phillip from screaming in my face making my infant son shake and cry as I shielded him to my body. I AM WILLING TO TAKE A POLYGRAPH TO ALL OF THIS... ARE DEFENDANTS, CASE PARTIES, PRIVY PARTIES?
**Reference SDNY Docket 13-cv-08736WHP at Pacer.gov files**
Keisha M. was made aware of these ordeals that I reported, and reported, and reported to not just her and the agency she is employed at but to City and State agencies, all of which said we can not get involved in court proceedings that they was not asked to get involved in they was asked to get involved in agency related complaints and complaints against individuals. Even complaints against lawyers to the places that censure or disbar them refused and the judicial conduct board. All of which either refused, passed my case, gave some bogus reply of not doing a job, ignored my complaint to them etc and offered no intervention. Yet I find it impossible to believe that they can leave civil rights abuses to occur, malpractice, even child abuse of refusing adequate services, but in criminal court many defendants had agency supports to their defense. Jennifer Pollissaint gave 1 referral as indicated on 13-cv-08736WHP to this plaintiff in 2013 and I paid $30.00 to a taxi driver to help me find the place that he took me to the address on the referral and it was an industrial complex that did not have parenting classes. Thereafter she gave no more referrals for the entire 10 months total that she was assigned to the family court case matter about my son. **Reference SDNY Docket 13-cv-08736WHP at Pacer.gov files**

21. [The first Visit Suspension] On approximately 1-2014 or the hearing slightly prior, Little Flower CFS staff under Keisha M.'s supervision authority, told the court that I assaulted Keisha M. at visitation, subsequently the court ordered me to attend mental health services in order to have visitation. When I did not immediately comply with that order, my visitation was suspended.

22. Prior to that order I was in compliance and afterwards also to where I was given psychiatric medication for 2 days and was taken off the psychiatric medication by Beth Israel Hospital service providers.

23. I was attending counseling services when Jennifer Pollissaint called and requested that I be put on medication for schizophrenia. The therapist Theresa Hsu-Walklet told Jennifer Pollissant in my presence that I did not meet such criteria but if I did that she would have done such. I was in post-partum physiologically and crying every day for my baby as the reason why I went to outpatient mental health services. I was reportedly traumatized at the actions of taking my child at birth and separation to non kinship foster custody, and reports were given to the ACS, Family court record.

24. Jennifer Pollissaint allowed the foster mom to not include me in co-parenting or information about my son, since the beginning of the case until the order of protection issued after 1 year of the same alienating, case delays, trouble etc that was produced as results from Little Flower CFS. That included that in 4-2014 the court of Susan Knipps recognized that I was traumatized and ordered ACS and Little Flower CFS to put me and my son in visits in Dyadic therapy to reinstate the suspended visits from 1-2014.

25. [The second suspension] Keisha M. proceeded with violating the court order that was specific to give me dyadic therapy while my son was 6 months-12 months old, to proceed with supervised therapeutic visitation services agency that offered no therapy, no dyadic, and caused me to leave remission from having panic attacks to having frequent panic attacks and nightmares etc terror from having to keep participating in their legal games that gave no results and ultimately I refused to give my son back and was charged with misdemeanor assault, child endangerment. I sprayed the foster mom with pepper spray because she took matters into her own hands when agency staff and I was waiting for NYPD to arrive to settle the matter, and ran at me screaming for me to give her my child, the agency staff grabbed my sons arms and tried to rip him out of my arms and that's when I countered their situation with the warning of and the use of pepper spray that caused the agency therapist to stop hurting my child who cried out from her use of force and stopped the foster-mom. I'm from Pennsylvania, where it is legal to use pepper spray to fend off an attack.

26. Keisha M.'s statements in #9 are lies. Listing several agency types for referrals when they only provided a fake referral from Jennifer Pollissaint and Keisha M. provided a referral to an agency in Brooklyn. **Reference SDNY Docket 13-cv-08736WHP at Pacer.gov files**

27. Despite #26 above, that I did not complete the parenting program in Brooklyn and Keisha M. was notified on the scene as to exactly why, despite what they reported against me that no other agency that was not linked to Little Flower CFS ever reported behavioral problems from me and only the two agencies directly linked to Little Flower CFS alleged the same type of pattern of unexplained circumstances but allegation of mental and behavioral health issues. Despite that I was put out of two programs that were directly linked to Little Flower CFS case

planning, I completed all of the services and mental health required of me in all documented and discussed service planning for reunification of custody of my son.

28. Additionally the third and only other person to provide unsubstantiated and untimely (beyond ability to provide proper investigation) allegations of behavioral health was the defendant Sheila Johnson who was a case planner assigned from 12-16-2014 till sometime during my incarceration Sheila Johnson was replaced by 9-2019 with Darlene Ellison. Sheila Johnson provided false testimony to the court 6-2018 stating that I was violent towards her and small children in 2016, where nothing was reported and the visit reports of 2016 stated that I had good visits and made no mention of any type of altercations. In fact Sheila Johnson did not report to the police or to the court in 2016 in order to safeguard the safety of children etc by having an arrest made, an investigation performed, or visitation suspended. And contrary to her behavior in email exchanges and **Reference EXHIBIT A**

29. The Actions of Little Flower CFS staff have been to commit fraud to undermine my efforts and ability to regain custody of my son and malicious intentional tort, along with gross negligence tort. The judge Frias-Colon was fully informed and despite was in support of the malicious prosecution that she allowed to occur and was helping facilitate such by having testimonies occur off the trial record before the trial that was purely emotional pleas, hearsay of what was not directly witnessed, from the opposition parties who made clear their unsubstantiated pro-adoption stances from a year or so before the TPR trial began.

30. #9's statement of thereafter, presumably to the timeline of #9, October 3rd 2014, there was no failure to comply as Keisha M. misleads the court to believe in her sworn affidavit, because thereafter October 3rd 2014 on december 16th 2014 Keisha M., and defendant Sheila Johnson, who Keisha M. introduced me to at court, was given a signed release of information of the services that I was in and the certificates of what I completed which included:
1. Domestic Violence group program
2. Enhanced Parenting Skills 13 week program
3. Cognitive Behavioral Services outpatient mental health therapy, standardized testing and Dialectical Behavioral Therapy program services conducted in a clinical mental health services setting under the care of a state licensed psychiatrist, psychologist and psychotherapist team who dealt with my patient caseload accordingly.
4. The only thing not completed was the anger management which was accepted in the form of Dialectical Behavioral Therapy in the state of Pennsylvania where such was occurring because DBT inculcates emotional regulation and addresses such. Additionally that program was completed from 9-12-2014 until 5-2015 and was issued in response to the dangerous to my health and well being poor judgment of Keisha M. to have visits without dyadic therapy in the time of such increased panic attacks as was reported per the situation that occurred on 9-12-2014 of charges of assault and refusal to return my son to foster care. **Reference EXHIBIT A**

7

31. All of the service plan programs were begun and completed within the NYS Law of 15-22 months foster care and ASFA of 1997 regulations. The time period began from 6-2014 until 5-2015 and the discharge from mental health services was given on 3-2016 as I maintained remission, successfully completed all services, therapy requirements, and standardized testing. **Reference EXHIBIT A**

32. Visits were suspended only twice prior to my 1-20-2017 incarceration. Once from 1-2014 until 4-2014 but Little Flower CFS did not administer visitation until well after the order to reinstate visitation occured. Little Flower CFS reinstated those visits on 8-29-2014.

33. The second suspension was from 9-12-2014 until 2-3-2015 where as 1 visit occurred at St. Luke's Roosevelt Dyadic Therapy Center, that I found online and told the foster agency staff about so that I could have visits, however the defendant Sheila Johnson was told to have security present at visitation in dyadic therapy and she did not provide Little Flower CFS security staff to the St. Luke's Roosevelt Dyadic Therapy on 3-6-2015 and after her discussion with the St. Luke's staff who could not provide their own security staff, Sheila Johnson undermined my visitation and participation in dyadic therapy per court orders to where I was unable to have visits until approximately 8-2015. Several months, again, after the court ordered visitation reinstated. **Reference EXHIBIT E. 2-3-2015 ordered reinstated visits, ACS Connections log record (**indicated Jasmine Brenier program Attachment Bonding Catch-up, certificate received etc).

34. In the beginning of 2016, this plaintiff attempted to discuss with defendant Sheila Johnson about progressing my case out of foster care into my custody that I completed all they asked of me plus extra programs and had all good visits in a long proven parenting skills period of time that their reports from FTC conferences etc reflected that. Sheila Johnson refused, and refused to make recommendations to ACS, unsubstantially. Additionally, Sheila Johnson reported that I was having outbursts about court and case problems to her to the case opposition lawyers and attributed such as behavioral health concerns. Stacy Charlenad was assigned to me in about 5-2016 and told me that such reports were made against me after she asked me what happened and told me do not talk to Sheila Johnson about the case, court, anything. So thereafter I did not discuss anything with the defendant Sheila Johnson as per my assigned counsel's instructions. I took my complaints to Janet Greaves who was an assistant to the administrative branch of Little Flower CFS. **Reference EXHIBIT A and EXHIBIT E** (correspondences to Janet Greaves, ACS Connection log record)**.**

35. As per #34 above, the meeting was scheduled at the foster agency to take place before I have my scheduled visit with my son on 6-1-2016 where Marcia Conyers, Sheila Johnson, Janet Greaves and I think either Kecia Williams or Jennifer Horsley was present and basically heard what i had to say and replied that "the reason Little Flower CFS would not make any recommendations to my son being reunited to me in custody was because Adriane Eisen of ACS told them that I have behavioral health concerns" their decision was based on what ACS Lawyer wanted them to determine against me and not based on all the work and efforts I put in

to have reunification of custody. There before and after, in 2016, Little Flower CFS staff moved to have a separate goal of adoption in agency goals, contradictory to the court ordered goal of reunification of custody to parent (me), this was established in records **Reference EXHIBIT F. Little Flower CFS goal change in agency planning and not court goal change**

36. Subsequently at a goal change conference attempt by case opposition parties, Adriane Eisen of ACS stated above and beyond the facts presented that I completed everything asked of me and had all good visits. That the service plan was completed after the 9-12-2014 incident that i was also in treatment for with outpatient services and completed. That she (Adriane Eisen of ACS) told the ACS facilitator that she did not believe that I (the plaintiff) benefitted from any of the service plan services that I completed. Without any incidents, episodes, problems, conflicts, etc given from me ACS Adriane Eisen stated such to the ACS facilitator Lazaro and thus concluded that all parties were unanimous to change the goal to adoption. Little Flower assigned staff who attended, Defendant Sheila Johnson, Marcia Conyers etc refused to present anything in the ACS goal change conference to the favor of this plaintiff such as certificates, visit reports, etc which was presumably on the ACS Connections case record anyway but was discussed from assigned counsel Stacy Charland and I at the meeting that was biased against me.

37. Douglas Hoffman presided on the case after Susan Knipps retired 4-2016 and refused to do the goal change to adoption and stated that procedural measures had to take place for such to be considered.

38. I watched Little Flower CFS staff case progress cases of females who was not white, and not muslim, without any hassle even similar to what they have done to my case and not one party from Little Flower CFS who interacted with me was of my race category. There was a case of the mom of Nadia who was a severe heroin addict who had 1 relapse and went to rehab during her completing service plan programs after she neglected her child due to being on heroin and told me her story from her own mouth that I watched have her case progressed to reunification discharge in 1 year of foster services because her visits was scheduled on the same times as mine for a long period of time up until her discharge. Director Elizabeth Falcone of Little Flower CFS told me that I would get my child back if I completed the services and all they asked of me.

39. The court changed the goal of reunification of custody to adoption in 2-2018, while I was incarcerated but not related to being incarcerated. During the goal of reunification of custody from 10-2013 until 2-2018, Little Flower CFS staff provided:
  1. Visitation
  2. No service plan program referrals but when ordered by the court did seek out a dyadic agency that was next door to their office "Seen and Heard" where that is the second agency of two that are directly linked to Little Flower CFS and only those 2 agencies linked to Little Flower CFS produced negative behavior court reports against me in favor

of Little Flower CFS adoption agendas. **Reference EXHIBIT A.** (Specifically Seen and Heard report and emails to assigned counsel refuting such).

3. Assisted in applying for NYCHA but refused to use PATH Family Shelter as a housing situation to fulfill their procedural due processes; equalities to other cases similar or worse than mine, to case progress my case to unsupervised until discharge from foster care is achieved or ordered otherwise and refused to work this plan as a presentation of planning for the subject child to the ACS for approvals. I was an out of state resident who moved to the New York upstate area approximately 3.5 hours from N.Y.C., in the city of Binghamton.

4. Did not case plan with family members, did not contact them but once per case planner; years apart to then not return their return calls and messages, and refused/ignored to work with the home study conducted, the out of state CPS involved by court order of Susan Knipps, the court needs for my cousin and my mom who applied for an ICPC to obtain custody transfer. Also refused compliances to family friends who tried to offer that help, and orchestrated coercing and intimidating threatening the biological father and his paternal ACS registered foster parent Aunt Sandra Solomon who joined the case and kept 1 ACS case spot available on her foster care loan to be able to obtain custody of the subject-child, attended visitation for a year was ordered unsupervised weekend visits that the foster agency refused to enjoin and ultimately orchestrated a conditional surrender stating the reason why is because they are (in 2016) adoption out my son to the foster parents. Little Flower CFS refused to present to the court that the subject child had good visits that I was able to see myself as my visit time was scheduled to occur after Sandra Solomon's who she brought a child in her care with her who was friends to my son that they would play hard at every visit. But that the court ordered a visit observation to occur at the Court MHS office in approximately 1-2016 where for whatever reason the subject child had at age 3 he cried and the biased MHS office staff ruled that he should not attend supportive services to help him transition to kinship custody but that he should stay in nonkinship foster care which is very awkward for mental health services to disregard the long term impact that unnecessary foster care has on children, their families, their relationships, etc.

5. Little Flower provided unnecessary programs that were not ACS or Court ordered, and was not ACS Connection Log planned for due to any concerns raised because none was raised. That irregardless, I successfully fulfilled, completed.

6. Little Flower CFS provided bus fare, transportation ways to visitation, some reimbursements included. Mostly due to my out of state residence, inability to find a job and housing in or near New York City.

7. Refused equality to progress my case the same as other cases, in accordance with ASFA of 1997 and New York State Law of 15-22 months foster care. Whereas provision of allowing a foster custody case to occur for over 6 years is not and was not given in state or federal statutory law, that Little Flower CFS deviated from; and deviated from procedural due process in equality and equal protection to other cases of similar or worse nature, and only offered fabrications mixed with the real evidences, and repeatedly reciting that Bellevue stated that I self reported schizophrenia. The records to

my only mental health services acquired as an adult since 1998, approximately 22 years, was given to the court and full cooperation to ascertain the facts of my not having that type of mental health history prior to the birth of my son in 2013 was given substantially to the court record, case parties so as to establish the facts and refute the allegations the exact same affect that completion of services and programs and mental health was also giving but that the case parties continued in malicious prosecution because they did not like the outcome in my favor, likely because I am a muslim and they didnt like my character either.

40. Sheila Johnson's Permanency Hearing reports and other 2019, 2020 Permanency Hearing reports under the supervision and director authority of Keisha M. was made to report to the court instead of diligent case efforts: diagnosis with schizophrenia, bipolar, depression, anger problems. Yet no mental health provider Little Flower CFS was given signed releases of information to and record copies of asserted that. But that was used as a measure to not have to effort diligence to somebody of that serious level of mental illness and such was allowed by Keisha M. to occur despite conversations and interactions proving otherwise of my behavior and character.

41. I never displayed and according to the reports from Little Flower to ACS, I never displayed characteristics of the diagnoses or anything that would contradict my goal of reunification of custody, before or during the case matter. Prior history reports showed that I had some issues in my adolescence as a juvenile but that none of that carried on into my adulthood from 1998 until 2020. That report was given to the court record in 4-2014. I fully cooperated in that case and was denied irregardless. This can be substantiated. **Reference EXHIBIT G. Signed releases of information throughout the case history, EXHIBIT H 2006 eval report, Reference EXHIBIT E also**

42. The contents of the EXHIBIT H report was misconstrued to the court despite the actual report was put on the case record, to have been a lifelong history of mental illness that never subsided. That was fabricated by David Usdan, and by the ACS and privy parties of ACS.

43. None of the records/reports that were not linked to having contact or picked by Little Flower CFS staff displayed that I had any problems with mental illness or behavioral health issues, versus the two agencies that Little Flower CFS orchestrated services at and the Court MHS office.

44. The following are the Mental Health Service providers that I sought out on my own to stay in court compliance and I have a long term history with in comparison to the Court MHS office, David Usdan and his colleagues, or the two agencies who issued allegations against my behavior but did not exactly say what the behavior problems was in an effort to send a negative report to the Family Court against me that would be accepted over evidence standards in their corruption practices problems.

a. Bellevue Hospital record the initial record from where my son was taken into ACS custody
b. Sidney Hillman clinic, postpartum MHS
c. Beth Israel Hospital, postpartum observation for Sidney Hillman's analysis due to Little Flower staff calling and asking for me to be put on schizophrenia medication
d. Cognitive Behavioral Services in Philadelphia, I had a long term court compliance outpatient service relationship
e. New York State OMH, I attended mental health services for the duration of my 32 month incarceration period.

None of the mental health service providers agreed with any of the case party, defendants, privy party allegations against my character and mental health. I fully complied and signed for release of information to access the files or I gave copies to the lawyers of what they could not obtain. With the exception of the OMH file that I received in January 2020 after a long battle to obtain such.

45. #11 in Keisha M. affidavit is false, visits last occurred on 8-3-2017 while I was in prison [from 1-20-2017 until 9-4-2019] where as after subsequent attempts and then 2018 attempts to do tele visitation, I did not press the issue for visitation while I was incarcerated because my son displayed trauma of refusing to get out of the foster parents car and I did not want them to abuse my son privately to provoke a reaction of refusing to visit me when he never refused to visit me prior while incarcerated and prior when I was not incarcerated. Although I was in agreement to not traumatize my son with prison visits; and I did not pursue visits further after failed and closed out televisits last dated letter 5-30-2018, subsequently the court suspended visits to a no contact order.

46. Contradictory to Keisha M.'s affidavit, Despite a no contact order being extreme for a child who was not known the reason why he was responding traumatically to entering the prison gates but can be deduced to have been that prison environment was too traumatic for him, after I was released from prison 9-4-2019 my visitation was still under strict no contact suspension and I was not afforded any opportunity to again prove my bonding, nurturing, ability to have a familial relationship with my son like I had proved before. **Reference EXHIBIT A, B, and E** (Specifically, Rana Ryan report 2016, ACS Connections reports, and post-release foster agency compliances, email exchanges proofs).

47. Contradictory to Keisha M.'s affidavit, I provided copies of 3 workbooks that I completed with parole that were relevant to the family court because they discussed being violence, abuse free and personal changes to a productive life. Two other certificates were achieved from parole related programs. My parole officer declined to get involved with the foster agency and stated if they need anything to request such through you and stick to the parole procedures that we had already established of relaying information. I gave a copy of a parole mandated mental health evaluation from a state parole chosen agency provider and a drug and alcohol abuse agency evaluation and drug testing report. **Reference EXHIBIT B**

48. Additionally I was contacted by a person from ACS because I have made various complaints to NYS-OCFS main office in Rensselaer against the foster agency and ACS in regards to the health and well being of my son deteriorated in foster care and proved to continue to deteriorate in foster care while I was under a 2 year no-contact drastic visit suspension, where I was accused as being the reason he was suffering trauma but that after they removed my visits he deteriorated into serious mental health diagnoses and failed everything in psych evals and in school. The defendant Barbara Simon is responsible for that because she preferred to stay on the case and produce fabricated reports that he was doing good in foster care and with foster care and only was suffering from seeing me but yet in 2019 during a 2 year visit suspension that practically began 8-3-2017, he was diagnosed with intellectual developmental disability formerly known as mental retardation under Rosa's Law. and Barbara Simon still refused to referral him from agency controlled reports to outside service providers who could assess, treatment, rehabilitate him. Barbara Simon kept him consistent to Play therapy which is for mild cases and small children, that he literally utilized playing to cope with any changes occurring, he was at televisits and the Osborne staff came and told me he was refusing to come into the televisit room because he was scared, crying, and took the toys and played. Similarly reports indicated that behavior was so wrongfully conditioned into him by Barbara Simon's malpractice that he was doing such while supposed to be receiving an education at public school. **Reference EXHIBIT B,** (post-release parole and foster agency compliances and proofs that such was given to Little Flower CFS and ACS and their reports.) **Reference EXHIBIT I 2018- 2019 complaints evidence, reports of my son's deteriorated mental health condition in 3 phases whereas LIttle Flower CFS and ACS refused to give him supportive, qualified services from outside providers; including my request for OPWDD intervention (letter from OPWDD).**

49. Keisha M. was fully informed in telephone discussions and in emails that I can provide my call log print out, my email print outs and my text message printouts if she needs that to be established thoroughly, or any of the parties, that I provided all of these copies, and past records, and refutations to them to clarify any and all misconceptions, whereas the case planner Darlene Ellison and her supervisor Hyacinth Tyson-King was refusing  to put such on the court report record that I told them defendant Sheila Johnson use to do the first year she was assigned to my case, (but that defendant Sheila Johnson began withholding information in 2016 and refused to put information that I sent to her from prison on the court record all together, except that I made books out of paper, colored pencils for my son, cards from coloring pages, letters and such that I was informed the court had to approve to be given to my son). I told Keisha M. that I gave all of such information on EXHIBIT to Darlene Ellison and that she told me directly "I'm not putting all of that on the record I'll mention it" i explained to Keisha M. that such needed to be put on the record to establish my cognitive functioning is not impaired or a risk to my son and that thats what that program dealt with it was conducted by State Office parole staff members catering to post-release mindsets and moving on. Keisha M. told that she would deal with them to get such put on the record and I always thanked her.  **Reference EXHIBIT B**

50. In 2016, while Marcia Conyers was the supervisor for defendant Sheila Johnson, after I was advised to not talk to Sheila Johnson about the court and case progressing issues that was

relevant to case planning my case, to plan for my child, to establish what; if anything further needed to be proven so as to receive custody of my child and any further complaints I had was to be addressed in email to Stacy Charland, and text messages. So anytime thereafter an issue occurred or anything to address I sent emails and texts or called Stacy Charland and told her fully what had happened. **Reference EXHIBIT A**

51. Since Little Flower and ACS began to play dirty after the dismissal of 13-cv-08736WHP in 1-30-2015, I began to compile evidences that I gave a full copy of to Stacy Charland by 1-2017 which included the following:
   a. An orange visit journal of detailed visit contents
   b. A CD from the Jasmine Brenier 2015 ABC program completion that Jasmine Brenier made from stilled images of the entire program video taped by her but refused to give to the court for proofs to my ability to parent and interact well with others.
   c. A letter from my mom to the court
   d. A usb flash drive and a 32 GB SD chip of all the pictures, videos from visits and my PDF of my parenting class book that I made proving that I understanding parenting
   e. A stack of over 150 pictures of visits with my son between my visits, and the biological father and his ACS foster parent aunt's visits and also pictures of my eldest daughter and visits with her while I was commuting between NYC and Pennsylvania in my maintaining my parenting between 2 separated children.

Ultimately, I had to report Stacy Charland, her successor when she left the NDS firm, Jessica Brierly-Snowden for not giving my evidence to the court of Patria Frias-Colon. When Patria Frias-Colon assigned Robert Rothman, she promised that he would produce my evidence that I gave. At that time in late 2018 that Robert Rothman was assigned, I had sent various evidences from letters from Osborne, completions and progresses in prison to include in my evidences and I was a very reliable resource on the entire background of the case because I was the only person who remained the same unchanged party, all others was replaced, retired etc. I had and have copies of hundreds of letters that I sent while I was incarcerated to Sheila Johnson, Stacy Charland, Jessica Brierly-Snowden, Robert Rothman and complaints to every agency and staff member that I filed complaint with in regards to the case about my son, some of which was already sent to this court in the first amended. I fully cooperated and did everything I was suppose to do to seek justice and to obtain custody of my son, and no matter how well I proved and did, the case parties had a prejudiced determination of refusing to return my son to me and the defendants either participated or condoned such by not doing anything at all to intercept the problems. **Reference EXHIBIT J Rothman email confirmed returning the items to me.**

52. As per #9's last sentence "between February 2017 and September 2019 Ms Wrobleski was incarcerated." During that incarceration:
   1. Sheila Johnson did not mail any correspondence, releases of information, well being or court reports to this plaintiff, for the entire 32 months incarceration. At all times of the incarceration time period, Little Flower CFS staff knew exactly where I was therein and contacted prison staff directly for information despite being told numerous times that they needed a signed release of information directly from me. In complete refusal to contact

me with whatever she was seeking from the prison staff and reporting noncompliance to the court, the defendant Sheila Johnson and Little Flower CFS staff continued to contact the prison and violated confidentiality by sending correspondence to the prison staff to ask me to sign over my rights in a paper that needed explained, for 6 months that was given to me to sign but was not explained in anyway or with instructions when sent to the prison ORC staff. I made a copy and mailed such to Robert Rothman and received no advise on it but then later found out that in my absence Patria Frias-Colon had made orders and given Little Flower CFS privileges that they would make my parental decisions in my absence and further not include as if they ever did before, that decision was involving the education system. I was told when I got out of prison that he was being dealt with in a smaller class room and that he had behavioral issues, whereas I told that I do not want them to put my son in any time out that involves isolation or abuse.

2. I maintained contact while in prison several times monthly and i maintained a meaningful relationship to my son irregardless if that was eventually not reciprocated because I am the parent and I was the respondent, he was the child that was under no obligation to prove himself and to know how to maintain and nurture family relationships. That was my responsibility and I diligently fulfilled it. Sheila Johnson reported when the foster parents tried to complaint to the court 5-2017 that my son was crying again after visits (that began 10-2015 at age 24 months in foster care per ASFA 1997 15-22 months foster care, per reports that he was suffering trauma after having visited with his mother; solely upon returns to the foster parents and foster care household, Little Flower CFS was repeatedly reported to of this as was the court and Legal Aid Society and none issued to give him qualified mental health treatment, to call in a qualified mental health expert that was not their own corrupt court MHS to give expert opinion, but instead made their own solution of parental alienation, penalize and punish me with all that they did above-mentioned and blaming me for their trauma caused to the subject child via excessive foster care and whatever services and supports that they refused to give to him in medical mental health deliberate gross negligence) that the case opposition parties, none of which are qualified in mental health alleged that such was "from seeing his mother" yet reportedly occurred only **after** visits; returning to foster custody. Sheila Johnson reported to the court record after she was ordered by Douglas Hoffman presiding to conduct a 3 day home study of the child's behaviors per the foster parents allegations, Sheila Johnson reported back that there were no abnormal behaviors. Subsequent to that, in the next months visit, the foster parents decided to bring him to the prison and not the ACS van service, and whatever occurred in the privacy of their car ride, the subject-child began frantically refusing to leave the car which gave me the impression that he was threatened with abuse. **Reference EXHIBIT K. 2017 court reports from Sheila Johnson, EXHIBIT I** (Specifically 2017 eval, 2019 diagnosis, Barbara Simon's reports).

3. Despite that I was the only person at Taconic Correctional facility for that period until 8-3-2017 receiving ACS visits on Thursdays, where no other persons was in the visiting room except officers supervising my visits, NYS-DOCCS has surveillance cameras that record audio and video. Sheila Johnson provided fabricated reports to the court record

stating that we had no meaningful interactions and stating contrary to what happened at the actual visit to give a consistent impression in accordance with legal standards to proceed on that we do not have a meaningful established relationship (despite 12-2016 report prior to my entering prison from Rana Ryan stating that we do). Assigned counsel NDS of Harlem staff Stacy Charland and Jessica Brierly-Snowden refused to issue the subpoena of the 3 visits at Taconic CF and 1 visit at Bedford Hills CF that proved that Sheila Johnson was fabricating reports, after I gave them the information that was given to me by NYS-DOCCS staff on where to send subpoena to for the audio video recordings copies.

4. My son was denied appropriate supportive qualified services and was diagnosed with PTSD 7-7-2017; impressed with developmental delays in failed psych eval standardized testing measures issued on him. **Reference EXHIBIT I**

5. Sheila Johnson continued to recycle reports stating that he did the exact same traumatic crying each time she attempted visits after the initial time of that on 7-6-2017 but not at Bedford Hills CF on 8-3-2017, which she also lied of that visit contents also. **Reference EXHIBIT K**

6. Sheila Johnson alleged that while I was in prison I was violent towards her in the visitation room, while under the supervision of NYS-DOCCS staff.

7. I made various items and mailed them to the foster agency to be given to my son, among the things that I did not mail was crocheted slippers and a teddy bear I made that I gave the yellow slip at a visit with Sheila that she later informed me stating that the prison staff refused to give her the teddy bear and took the paper from her without giving it back. I filed a grievance and complaint that returned that such was not their doings. **Reference EXHIBIT L. prison complaints on teddy bear**

8. Sheila Johnson visited me from 9-2017; 10-2017 when I asked her not to. I was transferred out of Taconic Correctional Facility to go to Albion Correctional Facility 10-31-2017. Sheila Johnson visited Riker's 12-2017 and 2-2018 where I asked the officer's to remove me because I feared she would lie against me in another report.

9. When i found out about Sheila Johnson's fabricated 2017 reports I confronted her respectfully on the October 2017 visit where she became aggravated and after I said what I had to say I asked the officer to remove me, and I sent 2 letters to her cussing her out for lying and not providing my proofs sent to her to the court. Prior to that I never disrespected her.

10. Sheila Johnson provided those two letters to the court of Frias-Colon in 6-2018 and gave changed testimony on 6-18; 6-19-2018 that described that although unreported in 2016 I always was violent towards her and children at visits and in 2017 also while in prison. Her statement was contradicted that she previously informed that in 2016 she did not supervise visits that Barbara Reese did. And reality that if I would have conducted myself violently towards her in NYS-DOCCS prison, I would have been put in Lock or SHU as the court may know from other cases involving prisoners in NYS state prison protocols.

11. As per letters sent to her several times monthly for the duration of my incarceration, I maintained planning for my son, working, cooperating, giving relevant information with

Little Flower CFS case planning to my reunification of custody even when the goal was ordered changed 2-2018. **Reference EXHIBIT N A.R.T. letter from Venning receipt.**

12. While incarcerated, in 2018 because I was subjected to inadequate law library access and materials while at Taconic CF in 2017, I began reporting to NYS-OCFS, DOI, and various city and state agencies of the conduct of the court case affiliated parties and case assigned staff conduct, refusal to give my son appropriate mental health and supportive services that Little Flower CFS and case parties actions caused:

   a. My son was reported to have trauma symptoms AFTER returned to foster care custody but not at our GOOD visits. Instead of qualified services he was only given Play Therapy by Little Flower CFS staff Barbara Simon

   b. My son progressed to a PTSD diagnosis with impressed delays to his development on 7-7-2017 psych eval. Which provided absence of a known medical causation to have developmental delays, cognitive impairment that i reported to NYS-OCFS that the only way a child would have developmental delays absent known medical causations was through serious child abuse or neglect 1012 F or H of the Family Court Act describes being in the custody of a parent or guardian who provides inadequate care per 1012 of FCA care standards that would put the child at risk for impairment if left in their custody and he has on record history of childhood trauma induced by the case parties excessive foster care, inability to help him and mishandling of the case and was not in my custody or anybody elses to receive such.

   c. In 2019 my son allegedly deteriorated more to and was diagnosed with intellectual developmental disability formerly known as mental retardation under Rosa's Law. Barbara Simon continued to provide her inadequate care, deprived him of treatments and qualified services of places that I contacted including OPWDD and refused to allow the case to go to the correct venue out of her control.

53. #10 of Keisha M's affidavit is false. Approximately December 2nd 2013, Susan Knipps on record refused to facilitate ICPC measures to my cousin Amanda Reed's request to attend court on December 10th to receive custody transfer of my son. My cousin and my mom planned that my cousin would respond in my moms absence because my mom could not attend or travel to NYC because her full time job would not permit her to have the time off whereas she also had to take care of my daughter left in her custody because of the open ACS case status. My mom had a full time job at the same company with benefits for over 20 years, 401k etc. she also has her own home on mortgage that would have been compromised if she did leave her job to attend visitation and whatever requirements ACS would have added for her to be able to obtain custody. Susan Knipps ordered an ICPC for both my cousin and my mom. Little Flower CFS offered no case planning with the CPS agency in Pennsylvania that did the court ordered home study and also Little Flower CFS staff offered no direct case planning with my mom or my cousin, and did not return their calls.

54. Joel Solomon, the biological father, his paternal aunt Sandra Solomon is an ACS registered foster parent, who at the time she joined the case, she had a set of twin girls that she adopted

17

and 1 child in her foster care from ACS. In her home she explained she had one bed available outside of what she currently had on her caseload, considering that she adopted twins, she specified that she would keep that one bed available for ACS to transfer my son to her household. Sandra Solomon was not signed with the Little Flower foster agency but was signed to another foster agency whereas the case would have to have been transferred out of Little Flower and to the foster agency that Sandra Solomon was assigned to. LIttle Flower did not facilitate such KINSHIP custody efforts that began 4-2015 until a year later in 2016 she signed a conditional surrender that decided without a court, due process, trial, and irregardless of truth, justice and legal standards that my son was to be adopted to the foster parents and that if she signs off she would be able to locate him and contact him until he turns 18 years old. So that he was not lost.

55. #11 of Keisha M.'s affidavit is false. Keisha M. as director:
  1. Was fully informed
  2. Was informed that I completed the service plan programs again in prison and certificates were given, copies of such were given and compiled as ACS advised me to do in 9-2019. The programs completed a second time from the first and only service plan given was: parenting class, Aggression replacement training which included domestic violence and anger management, and mental health services through NYS-OMH. Copies was given to the foster agency per the compilations that ACS staff instructed me to do and email ordered Little Flower to turn over to ACS
  3. Post-release mental health evaluation report was given that explained no services was recommended as needed at that time, from an agency selected by NYS parole, to report to parole, copy was given to the foster agency and ACS via the foster agency
  4. A drug and alcohol abuse evaluation was conducted by a NYS parole selected agency, that also provided 5 or 7 panel drug testing and reported results in report and to parole copy was given to the foster agency and ACS via the foster agency
  5. Welfare to work program was completed with a certificate, re-entry program was completed, and women's group was completed all of which had certificates and was given copies to the foster agency and ACS via the foster agency
  6. As per the women's parole group, I completed and made copies of 3 workbooks that was relevant to prove my cognitive function, intelligence, and ability to thrive without violence and be a productive positive family member and member to society

Keisha M. was called and emailed and informed of these things and specifically the 3 workbooks because I wanted those presented on court record. That my lawyer Robert Rothman was also given copies and that he has not provided any of my evidence to the court record thus far so i anticipated that he would not do so and that I begged her to order Darlene Ellison and Hyacinth Tyson-King to produce them to the record whereas they said they would not.
**Reference EXHIBIT B**

56. #12 of Keisha M.'s affidavit is false. Three visits at Taconic CF with long gaps in between occurred and 1 visit to Bedford Hills CF. the visits was attempted allegedly to Riker's 12-2017; 2-2018 while I was there for court, and that I applied for televisitation 3 times and both Marcia

Conyers and Sheila Johnson refused until they was court ordered to comply on 1-26-2018 whereas thereafter Osborne Association was attempting and case working to provide televists 3-2018 until 5-30-2018. Thereafter the visits was mutually not attempted out of concern for the subject child's mental health and well being on my part and the other parties part equally but was only acknowledged by case parties to be of their concern and did not document equally that I agreed and did not need a visit suspension in order to come to that reality. It was stated that the prison environment had a traumatic affect on the subject child who was not an infant child as stated by Keisha M. but was almost 5 years old then and is over 6 years old now. **Reference EXHIBIT M letters involving televisitation and Osborne Association, prison letters proofs to compliance and reporting**

57. According to Keisha M. 's sworn affidavit to the court, she portrays many misleading statements of the case duration, child age, case information falsely put therein or conveniently left out.

58. Keisha M. also portrays and misleads the Court to portend that I failed to do what I was suppose to do or #13 "failed to avail herself of available options to regain custody of her child." Yet contradictory to her and case related parties claims and depictions, at the very minimal all of my certificates of successful program completion was put on the court record before 2016 (from the first time I completed the Service plan of two times and extra programs) from Sheila Johnson.
I attended and cooperated for 6 years not to not reclaim my son. I attended and cooperated for over 6 years, they did not make any determination to adoption in the first 15-22 months that would have been procedural and substantive due process and nothing changed in my behavior and cooperation after the first 15-22 months because I always remained the same strong person with the same determination and focuses. I attended and cooperated even when I was in prison and afterwards. I had the option to not have to endure court trip bus rides from Albion to Bedford Hills CF that was 8- 10 hours under normal conditions and caused me exhaustion and leg swellings. **Reference EXHIBIT A, B, D, E, L and M**

59. #13 of Keisha M.'s affidavit is false. The case docket was NN 42965-13 which has remained the case docket of the case matter for the entire 6 years but an additional docket of B 43917-16 was added as a TPR docket when Dwight Kennedy appeared as counsel for the foster agency 5-2016 and filed for TPR trials and due processes to take place.

60. Dwight Kennedy's original filing portrayed I had schizophrenia and was unable to care for a child, unsubstantial allegations that I refuted to him directly and to his co-signer Antonino Esposito representative of the Little Flower Children and Family Services. The allegations came from his client Sheila Johnson who was also reporting that I had schizophrenia when nobody diagnosed that.

61. Dwight Kennedy was given special privileges in the TPR court and seemingly because he boasts online of a 98% trial success rate the privileges extended to that determination in his

19

favor because the evidence weighs heavily against the allegations from the opposition parties to not afford them what they received. Among those special privileges given to Dwight Kennedy, he was allowed to amend the TPR petition 2 and a half years after filing (12-2018) when the rules stipulated up to 60 days after filing (6-2016).

62. #13 seems to include Dwight Kennedy's actions as that of Little Flower which was not in accordance to the Adoption and Safe Families Act or New York State statutory provisions that clearly define 15-22 months of foster care the first time and not several rounds of 15-22 months later after case building. The initial foster custody entry until 15-22 months did not give a chance for Little Flower CFS to file TPR because of the judge presiding Susan Knipps; it was known to the case that I fully cooperated, complied, completed services and was not resistant to getting my son back which is hard to believe that I would attend the court case drama for over 6 years and ever at all be resistant to the objective of attended to get my son back. I fully efforted towards the goals of reunification of custody of my child to me, per the court ordered goal that remained intact until 2-2018 of reunification of custody afforded to me the parent. There was no grounds to file against me, Little Flower CFS and Sheila Johnson distorted to Dwight Kennedy the mental health status of this plaintiff per TPR petition upon his original filings and thereafter Dwight Kennedy after informed that I did not have such diagnoses, decided to proceed in malicious prosecution instead of withdraw or drastically alter his participation in the case for the perversion of justice to not occur, to give an honest service to the court, the case, and his clients instead of an eager win to keep a 98% trial success rate.
Little Flower CFS staff did not file a TPR per 15-22 months because there was no grounds to file against me, on or with, until they presented malicious deceit. The actions of Little Flower CFS parties was not in accordance to ASFA of 1997 or NYS statutory Law of 15-22 months foster care, but was an abuse of the legal system and pretense of filing in accordance. **Reference EXHIBIT N ASFA of 1997**

63. #13 last sentence is false, Ms Wrobleski produced all certificates, explanations, cooperation and participation so thoroughly to Little Flower and assigned counsel who refused to produce such to the court and cheated me that I even told Little Flower CFS staff and contradictory to the sworn affidavits of Keisha M. and Hyacinth Tyson-King, that I told them and that I did give all copies to them and to Mr. Rothman to produce to the court, who has not provided them to the court or addressed providing them to the court and because of that I asked them to provide them to the court record as Sheila Johnson used to put certificates with her court reports to the case record. That Frias-Colon has been threatening me and refuses to let me talk on the record except she reacts that whatever I say is mental illness outbursts." That I was forced to silencing and censuring in the court of Patria Frias-Colon. Totality of the circumstance.

64. Additionally Patria Frias-Colon blamed me for the change in lawyers that happened multiple times over a period of 6 and a half years of an illegally open case, that Little Flower CFS lawyer Dwight Kennedy misrepresented the facts of to the court of Patria Frias-Colon and instead of relying on the evidence of the anders briefs and transcripted reasons to why the lawyers was asked to relieve themselves from the case matter, Dwight Kennedy urged her to link such to a

mental illness reason and that is what Patria Frias-Colon did such and not impartial, even when explained to on record and factually not responsible for the actions of the court appointed counsel on the case, that 2 was conflicts of interest who signed onto my case representation when they knew beyond reasonable doubt that their partner and firm representatives was standing in the same court room assigned to opposite parties, that another gave a brief stating that she lost communication with the case due to her own workload interfering etc. and ultimately in complaints that was repeated to Frias-Colon, as in both trial events Gary Schults was relieved for not presenting witnesses and helping the case legitimately in my favor, Robert Rothman also did not produce evidences to the court record and I was compelled to keep him as per 12-3-2018 hearing specified on record that this is your last assigned counsel etc. because I could not afford to hire counsel of my own and because I was incarcerated and unable to proceed solely as pro se in a malicious environment that would have and has proven to have used malicious tactics to harass and overrule my ability to proceed in an impartial fair trial hearing environment asa pro se litigant, determining factors. Additional to the list of relieved counsel was NDS of Harlem who had 2 assigned to me when one left the other continued to not provide my evidences and arguments to the court record and allowed misrepresentation to occur that included refusing to give the court a letter from Osborne Association dated 5-30-3018 recommending therapy to help my son have visits etc. Ultimately, the evidence given to NDS of Harlem staff and not the dozens of letters sent to them, was given to Robert Rothman who succeeded them in my representation; and at the end of the TPR trial on 1-29-2020 approximately a few weeks later returned such to my possession upon my requests. Contrary to Keisha M.'s affidavit I did avail myself through all means available to me. **Reference EXHIBIT B of all of 2019 post release emails, exchanges, copies given**

65. #14 of Keisha M.'s affidavit is false. This plaintiff was not afforded opportunities to present supporting documents. Little Flower CFS was the agency charged along with ACS to case plan and coordinate aspects of the case that included providing such information to the court record. Also, within my ability, I provided additional copies that I paid for all copies, to the assigned counsel given to me by the court and was also promised; guaranteed by Patria Frias-Colon that the assigned counsel would provide all of my evidences to the court record and who ultimately did not comply to that promise made despite instructed to do so. Due to the past behaviors that I explained to Keisha M. I secured myself by relying on Little Flower CFS staff to do their job and produce such documents to the court record at least a month before the trial conclusion occurred, who also refused to comply. **Reference EXHIBIT B and J**

66. #17 of Keisha M.'s affidavit is false, as described previously here-in, and for what was barely described was that while incarcerated I complained to Little Flower CFS, NYS-OCFS, OPWDD, assigned counsel, and city and state agencies that Barbara Simon was not qualified to deal with my sons diagnosed and impressed serious diagnoses. I even informed Little Flower CFS staff Kecia Williams, Hyacinth Tyson-King, Darlene Ellison, and Keisha Maluphurs in post released meetings and correspondences, that Barbara Simon was not clinical, was not qualified to prescribe or know of medication matters, was not OPWDD because developmental disability is separate from Mental health services in and of its own category of services and institutions, that

I informed agencies, assigned counsel etc that Barbara Simon was biased to her employer in reporting and case agendas, refused my participation, and only produced unqualified treatment; one sided reports that was only from Sheila Johnson and Foster parents that was discredited in previous testimony as having occurred on court record but was not discredited from Barbara Simon as not having occurred **Reference EXHIBIT B, I and K (**per Sheila Johnson's 6-1-2017 report from 5-18-2017 court orders and cross examination that provided that the foster parent gave a first party testimony of incidents from the subject child to the court record on 5-18-2017 but was found to not have been a first party witness because she was at work when the alleged incidents occurred)

67. That truthfully speaking, Barbara Simon is and has always been inadequate and unqualified care to the subject child, and is only a LCSW employed by Little Flower to provide limited mental health services and who overinflated her capabilities and capacity to be more than what she provenly offered. Barbara Simon's extent was not treatment plans to known therapy programs offered in clinical psychotherapy office settings that provide a treatment team to every case that includes a psychiatric care, psychologist care, and psychotherapist care. In Barbara Simon's official capacity, she was not clinical with psychiatry and psychology providing monthly observation, analysis, and treatment team efforts as is what occurs in CLINICAL ENVIRONMENTS collaborative to address the patient's psychiatric and psychological needs and in accordance to what is common knowledge when referred or asserted to have a declared need for therapy what is generally meant by therapy is CLINICAL MHS not a play therapy program from an agency that is not a mental health service provider clinical outpatient agency. Nor is Barbara Simon qualified to treatment and deal with Mental Retardation or Intellectual Developmental Disability per Rosa's Law, because Mental retardation is a separate category from mental health services that provides its own separate institutions, treatments, assessments etc by persons with different qualifications than those in the mental health field. And Little Flower CFS, Barbara Simon, Sheila Johnson, ACS defendants refused the subject child's mental health, well being, and Developmental needs by refusing to have qualified services intervene timely, appropriately, adequately to assess, test, treatment the subject child who is only receiving inadequate care at public school along with play therapy from defendant parties til this present time in the cases. **Reference EXHIBIT B, I, M, O** (per Barbara Simon's reports and lack of qualified treatment plans in the treatment plan sections, but continuation of unqualified play therapy and lack of trauma support that she asserted to be a self-declared specialist in trauma of but provided absolutely no services of to a child that was determined to have a need for clinical qualified mental health services and OPWDD category interventions reference 7-7-2017 and 2019 psych eval findings)

68. There was 4 judges to the case matter that included
   1. Susan Knipps from 10-2013 until 4-2016;
   2. Douglas Hoffman from 5-2016 until 7-2017;
   3. Ta-tanisha James from 8-2017 until 2-2018;
   4. Patria Frias-Colon from 2-2018 until 2-2020
Legal Aid had 3 staff changes:

    a. Natalie Albert retired in approximately 2017 or 2018;

    b. Gisselle Cabrera in 2018 with the exact same notes and stances as Natalie Albert;

    c. Heather Saslovsky 2019 till present

ACS Law Dept. had 2 staff changes:

    1. Adriane Eisen from 2013 until 2018;

    2. Morgan Molinoff from 2018 til present with the exact same notes and stances as Adriane Eisen

Little Flower CFS had various staff changes:

    a. Jennifer Pollissaint and Keisha M. case planner and supervisor from 10-2013 until 7-2014;

    b. Keisha M. and Tizshonda from 7-2014 until 11-2014;

    c. Sheila Johnson and Keisha M. from 12-2014 until 1-2016;

    d. Sheila Johnson and Marcia Conyers from 1-2016 until 11-2018;

    e. Darlene Ellison and Hyacinth Tyson-King and Director Keisha M. from 2019 until present

69. Contrary to Keisha M.'s depiction, I attended practically every court date in my capacity and every visit unless I was denied by Prison staff to transport me which occured in all of 2017 and in some random cases thereafter, and unless I was sick with bronchitis to attend visits which rarely occurred. Irregardless I always and fully maintained my familial relationship and bond and was capable of redeeming such to my child even when weakened by state and opposition party efforts to weaken the familial bond as recited in Santosky v. Kramer case law. **Reference EXHIBIT E, O Praised reports from ACS office of Advocacy, Little Flower CFS etc.**

70. Marcia Conyers was assigned to case planning supervision from 1-2016 until 11-2018. #5 is incorrect, that from when she was assigned to the case until incarceration there was no dyadic therapy there was the Seen and Heard agency next door to Little Flower CFS office in Queens that had multiple intake sessions with me because of their expressed needs to observe my behaviors and interactions, thereafter while the first visit took place there the coordinator ended the session because I would not agree with her to backtrack my established relationship by asking him to pick a name to call me by that even if it was "banana" we would do that, after she was explained that in my upbringing and beliefs I believe that persons have a name or title to be referred to or called by and not objects; that we had established in the foster agency parental bonding that I am mommy. The coordinator would not discuss the matter with me or when Sheila Johnson called her after telling me that I have to just comply no matter what it is to get my son back and I agreed on that ground to continue with the Seen and Heard program, but the coordinator also refused Sheila Johnson and opted to close the program to us. **Reference EXHIBIT A printed emails**

71. #5 is incorrect that there was regular visitation in fact the incident of 9-2014 was not in Marcia Conyers timeline as she and Sheila Johnson both joined the case afterwards, her speaking on this topic is hearsay irregardless what kind of gossip reached her from colleagues at that time, she was not present to the matter or to the case at that time period.

72. Visitation was not within a program setting from 1-2016 until a program was successfully completed in 12-2016. Parenting with Love by Rana Ryan started 11-23-2016 until late 12-2016.

73. Contrary to Marcia Conyers sworn affidavit, Little Flower CFS maintained visitation at 1 hour per week 1 day per week from 12-2013 until Stacy Charland joined the case and Douglas Hoffman ordered increased visitation on 7-2016 2 hour visits twice a week, until incarceration occurred. Thereafter Little Flower CFS asserted that it was financial hardship to the foster parents to travel approximately 1 hour drive out of City limits to Taconic CF for weekly visitation and that although weekly ACS visits was every Thursday at the two adjacent prison facilities, Little Flower CFS orchestrated that my visits was only once a month for an hour that they barely met because I was only given 3 visits at Taconic CF, and 1 visit at Bedford Hills CF.

74. The origin of the dyadic therapy order was in response to what the court was provided at the time of the 4-10-2014 introduction of the concept of ordering dyadic therapy to the respondent mother who gave reports from Beth Israel to the court stating that she was traumatized along with Sidney Hillman clinic providers discussing that she was struggling with being separated from the subject child. That at 4-10-2014 the subject child was 6 months old and the mother was subjected to serious trauma post-partum that warranted dyadic therapy to assist in the matter and that eventually the judge of that order retired from the case and no further question of need for dyadic was posed except a recycled response of relying on old case notes without sufficient details, without differentiation of the age and changes within the case duration that occurred to provide for a no longer needed dyadic therapy. The issue of trauma was overcome 5-2015 with successful program completion of the Dialectical Behavioral Therapy program that proved that this plaintiff benefitted from programs despite ACS Law Dept. unsubstantiated assertions, because this plaintiff was less likely to have panic attacks and was more in control. **Reference EXHIBIT B for Beth Israel report, CBS reports etc**

75. When the 9-12-2014 incident occurred as a byproduct of Keisha M.'s contempt of court orders, again dyadic was ordered at a young age of the child before the child was reported to have had any symptoms but did have a bonded relationship with biological parents and appropriate to foster caretakers that was agreed upon by my psychotherapist. The problems resolved themself with completion of the Dialectical Behavioral Therapy program that lessened the presence of panic attacks and PTSD symptoms but did not eradicate them. The panic attacks re-emerged in 2017 when incarcerated and when not produced to the court dates throughout 2017; when Sheila Johnson antagonized the situation by fabricating reports, when Little Flower CFS staff sought to have visitation occur less often than was in place prior to incarceration while they had the ability to produce visitation more than what they actually offered, and all court related reasons as well as a few confinement related reasons. **Reference EXHIBIT E ACS Connections log post DBT Completion in comparison to Beth Israel report and CBS records of trauma**

76. #6 of Marcia C.'s affidavit is wrong. This plaintiff completed parenting class by 12-16-2014 and again in prison, voluntarily, in 2017 certificates was provided to Sheila Johnson and

affirmation from the ORC staff to the completion of Aggression Replacement Training as well as affirmation to mental health compliances through NYS-OMH prison mental health services. **Reference EXHIBIT B all copies was given again, and EXHIBIT M**

77. #7 of Marcia C.'s affidavit is wrong. Marcia Conyers is misleading and fabricating the case rumors and gossip of 2015 mixed in with her non-hearsay direct timeline of case involvement of 1-2016 until 11-2018 testimony in an affidavit sworn. The 2 visit suspensions were as above-mentioned here in and nowhere near the 2016 pre-incarceration timeline of Marcia Conyers presence to the case. The two visit suspensions timelines are as follows: 1-2014 until 4-2014 court ordered ACS to explore dyadic therapy for the respondent and child visits commenced 8-29-2014 in a non dyadic program. The second suspension was 9-12-2014 until 2-3-2015 court reinstated visitation with dyadic and with security, visitation occurred once on 3-6-2015 and not again until approximately 7-2015 despite court ordered reinstated visits. The extra time that Little Flower CFS took outside of court orders that deprived me of court ordered visitation was due to the poor case planning and case management of the ACS and Little Flower CFS, that often resulted in this plaintiff finding her own service providers to the court and ACS facilitated demands. Both suspensions were approximately 4 months each under the court order but more time was taken by the ACS and Little Flower CFS adversaries in their adversary. Thereafter when the visitation did occur after the second suspension, a program called Attachment Bonding Catch-Up by Jasmine Brenier was facilitated from 8-2015 until 12-2015 with the certificate and gift card with a CD of the program awards was given in 1-2016. That program was a non dyadic program.

78. All before Marcia C. was assigned to the case, met me, or had any direct involvements The programs completed prior to Marcia C. being assigned to the case was within the ACS and Little Flower CFS case records files, along with copies of the certificates and such that was provided along with those successful completions. Up to this point prior to Marcia C. being assigned to the case, the parenting class in Brooklyn was refused but was compensated and made up by a 13 week enhanced parenting class being completed, and Dyadic therapy at St. Luke's Dyadic Clinic was thwarted by Sheila Johnson not providing the security guard from the foster agency as ordered by Susan Knipps. Dyadic was not reordered after 2-3-2015 second defied order, and no new service plan was given after the original service plan was issued on 10-25-2013. In fact during Marcia C.'s beginning timeline, after Seen and Heard refused to continue, the next subsequent program given was another non dyadic program called Parenting with Love by Rana Ryan who issued a favorable report. That program began 11-23-2016 and concluded approximately 12-26-2016 with a certificate and report given. **Reference EXHIBIT B all given in 2019, EXHIBIT A Rana Ryan report, and EXHIBIT D, E, I, K**

79. During Marcia C. 's timeline pre-incarceration, I attended all scheduled visits, conferences, meetings and court appearances concerning me and my son with a few sick days occurring that did not negatively affect me, or deprive me of being involved in case planning changes or discussions. **Reference EXHIBIT A**

80. As per #6 of Marcia C.'s statement of 2014 in that context is true except that Little Flower did not avail these to me or continue to avail those to me, I was in those services in Philadelphia, Pennsylvania that I found on my own. I am a native of the Commonwealth of Pennsylvania and moved to Pennsylvania in 2014 until 9-2015 whereas I moved to Binghamton, New York. While residing in Pennsylvania in 2014 and 2015, I fulfilled those services consistent and fitting the criteria to the 10-2013 service plan report and to further state that all services was signed release of information to given access directly to Little Flower CFS staff Keisha Malphurs', Little Flower entity and ACS entity on 12-16-2014 at the Family Court lobby. **Reference EXHIBIT D all Philadelphia agencies**

81. As per Marcia C.'s statement if pertaining to her own case timeline of 2016 is definitely false information. furthermore in both contexts, Ms. Wrobleski was never unresponsive and did in fact, provable fact, always fully cooperate, comply and participate. **Reference all EXHIBITS**

82. #7 of Marcia C.'s affidavit is false as described in #6, also noting that Cognitive Behavioral Services in Philadelphia was the outpatient mental health clinical service provider from 6-2014 until successful discharge 3-2016 and the ABC program concluded also before Marcia C.'s 1-2016 timeline from program participation 8-2015 until 12-2015 successful completion.

83. #8 failed to report that Little Flower CFS caused parental alienation upon both subject child and I that visitation had long gaps from twice weekly visits that occurred until 1-20-2017 incarceration, under the supervision of Marcia Conyers, no visits occurred from 1-20-2017 until approximately 3-27-2017, 1 visit in April, no visits in May because the foster parents requested that such be suspended because he was crying after removed from visits to return back to foster care (the court date of 5-18-2017 ordered visits to continue against the suspension issued by the foster agency that deprived the May visit from occurring), Visit occurred on 6-1-2017, attempted visit occurred 7-6-2017, visit occurred on 8-3-2017, thereafter alleged attempts occurred to produce a visit once monthly until 2-2018 last attempt. I had provided 3 applications for tele visitation to occur from 10-2017, 11-2017 and 12-2017 that were all declined specifically by Sheila Johnson and Marcia Conyers until the court ordered Little Flower to accept and facilitate tele visitation on 1-26-2018. Thereafter on 3-5-2018 intake with Osborne Association tele visitation commenced per court orders of 1-26-2018, and the application for tele visitation was approved and processed to that agenda. **Reference EXHIBIT letters from Osborne Association confirming defendant's refusal to tele visit etc subsequent notifications.**

84. #8 of Marcia C.'s affidavit is misleading that I needed a suspension in order to react and support the best interest of my child when I was fully compliant to initiate 3 tele visit applications that Marcia C and Sheila Johnson both declined, and that after attempt to visit was made through tele visits and upon discussion with Osborne Association, I agreed to not do the visits under the circumstances while incarcerated and did not need orders placed against me to react in and support the best interest and well being of my child the subject child. No subsequent request or demands for visitation was made to the affect that I needed suspension to comprehend child well being.

85. #10 of Marcia C.'s affidavit is false as per the same statements made from Keisha M., in unison, and consistent with my reply of facts per all of Keisha M.'s affidavit.

86. Hyacinth Tyson-King was assigned to case supervisor over Darlene Ellison case planner for Little Flower CFS from 1-2019 until present. #7 is false and misleading. While incarcerated, as previously states, Little Flower CFS staff made no communication efforts except as I previously described of Sheila Johnson's 2017 endeavors and no mail correspondence was made from any Little Flower CFS staff at any time during my 32 month incarceration period except in the last few months I was notified of Darlene Ellison as the case planner.
I did not meet or talk to Ms. Tyson- King until post incarceration and I engaged letters to Darlene Ellison prior to my release (in 2019) not as described in #7 by Ms. Tyson-King.

87. Upon release and in 9-25-2019 Family Team Conference discussions, Darlene Ellison and Hyacinth Tyson-King was presented with a file of all past and present certificates, MHS reports, and informed of their faults on the PH report of stating and recycling to the court that I was diagnosed with schizophrenia. All of this was compiled under the direction of ACS who was notified by NYS-OCFS per my complaints of mismanagement by the case parties that affected the well being of the subject child and the relayed case information to the court, ACS records etc. Various requests pertaining to my sons services, receiving reports, and altering their own fabricated reports to not say I'm schizo and to not support an adoption wantonly but to support permanency as is the job. **Reference EXHIBIT B**

88. I declined to allow Little Flower CFS to have direct contact with my parole officer because I felt that my parole situation had nothing to do with Family Court and was a privacy intrusion that was none of their business to concern themselves with, that I was unwilling to give them free access to privacy intrude into my life unnecessarily. In the alternative, I explained that I would give them certified certificates, reports from what I was parole mandated to do and in the same way I would provide such to NYS State parole.

89. My parole officer also did not give permission for them to contact her, which her words of do not give them my phone number is a direct order and part of my conditions that I have to obey her in what she tells me to do and what to abstain from doing. She stated that we do not get involved in Family Court affairs like that and that if there is anything that needs relayed you can present such on check-ins or in text messages to me. In the alternative, I explained that I would give them certified certificates, reports from what I was parole mandated to do and in the same way I would provide such to NYS State parole.

90. Under Tyson-King's supervisory position over the case planner assigned, both Darlene Ellison and Hyacinth Tyson-King upon first telephone call after I was released from prison, without ever meeting me, and without knowing of what completions was made, had expressed to me that they wanted me to commute frequently to Brooklyn from Binghamton to do the service plan services of Parenting classes and mental health services through them. I explained

that I completed the service plan again while in prison and that I was ordered post-release by parole to have a post-release mental health evaluation to determine if I needed mental health services in which I would have been parole mandated to attend. I would need permission to leave the county geographic restrictions to attend any programs so you will have to send me a letter in email to present to my parole officer. Thereafter I provided Darlene Ellison with the report from the post-release mental health evaluation agency selected by NYS parole and proved that I was evaluated to not have a need for mental health services. Tyson-King and Darlene Ellison did not pursue asking me to participate in parenting classes again, mental health services, or provide the letter to give parole to give me permission to attend such in Brooklyn as they previously discussed. Contradictory to the sworn affidavit of Hyacinth Tyson-King that alleges noncompliance from me in these matters. **Reference EXHIBIT B all of 2019 correspondence copies, certificates etc given and exchanged between Little Flower CFS, ACS and myself.**

91. The post-release mental health evaluation Darlene Ellison told me fulfilled MHS criteria. I told her that the agency who did the evaluation refused to discuss the evaluation directly that they administer the evaluation and that the report went to a separate entity records department. I had to ride out to that place and request a copy in person or mail in a release of information paper requesting such, but that there were 2 separate entities and I attempted to contact the evaluator but received no reply. Darlene Ellison did not give me a release of information paper to sign or address what exactly she wanted released to her from that mental health evaluator. Additionally after receiving the copy of the evaluation report Darlene Ellison did not bring up the subject of asking me to participate in mental health services or programs thereafter, did not complain of such, nor did she provide any releases of information to sign asking for any information. No court report complaint of noncompliance was made. **Reference EXHIBIT B**

92. I provided certificates to my completions of Welfare to Work program, Ready Set Work program, Re-Entry programs that were programs to educate and engage me in finding a job as a convicted felon, job search and interview skills training, etc. **Reference EXHIBIT B**

93. I provided a certificate of completion of the Women's Education Program that I also provided copies of 3 workbooks that I completed, 1 in November 2019 and the other 2 in December of 2019, during the 8 week program. An original certified sealed original certificate was given to Little Flower CFS staff Darlene Ellison. **Reference EXHIBIT B**

94. Since 9-2019 release from prison, and upon being informed of the severe diagnosis of intellectual developmental disability that was impressed about my son, I requested from Darlene Ellison, Hyacinth Tyson-King, Keisha Malphurs, and assigned counsel to give me copies of my sons any mental health records, and education records to inform me of what exactly happened to him and what was done. I was advised to ask for this in writing by Keisha Malphurs in November when ACS staff told me to contact her and report that staff was not giving me requested well being information. I gave the copy of a sworn notarized affidavit of the specific request (**Reference EXHIBIT B and I, affidavit requesting my son's mental health and**

education records) to Tyson-King on or about December 6th or 9th court date in the Family Court lobby. I followed up with such regular requests since 9-2019 initial request, and was told that when they get that they would give that to me. Darlene Ellison only gave me a report card which gave no details from education records of complaints and statuses about my son, and gave no mental health record informations per the written request and explained in detail exactly what information I was seeking.

95. Hyacinth Tyson-King, Darlene Ellison, nor Keisha Malphurs never specified that attending MHS would give me an opportunity to visitation. Instead, They presented Barbara Simon's affidavits to the court that specified that she had a problem with me having any visitation, that she was ordered to prepare the subject child for adoption since 2-2018 and thus visits would conflict and not be in his best interest per goal of adoption.

96. #10 of Hyacinth Tyson-King's affidavit is false, in unison with Keisha . and Marcia C.'s affidavits and is false to the extent of my provided EXHIBITS, and refutations herein.

97. The assertions of Marcia Conyers and Hyacinth Tyson-King of rigorous attention to case duty and job does not guarantee that the subject child is being adequately cared for. The proofs to their lack of the standards that they alleged is that he has deteriorated to more serious, severe diagnoses without any medical, neurological, genetic causation for intellectual developmental disability. And they have been requested and alerted several times to the correct services that I demanded prior to the prejudiced trial conclusion of 1-29-2020. Historically, Little Flower had ACS dismiss investigations from NYS-OCFS into substantiated abuse reports against their refusal to provide adequate services to the subject child, made by me in meticulous details, that Little Flower CFS fraudulently reported to ACS of the NYS-OCFS investigation that this plaintiff had schizophrenia, severe mental illness to make such go away. Those of which are subsequently and previously contradicted by service plan program and other non-mandated programs completions and reports that favored my character and the evaluator also reported to Sheila Johnson that "her son does not have enough words for his age", that Sheila Johnson concealed and distorted the information of the incident that the program coordinator and I was both present at inregarding to the subject-child lashing out at foster care and lashing out traumatically at return to foster care that Little Flower CFS staff covered-up concealed information and lobby camera video footage of despite State Child Abuse line, NYS-OCFS, ACS was contacted and involved. **Reference EXHIBIT E ACS Connections log entries 2015-2016, EXHIBIT B, and O.**

*In Response to Dwight Kennedy's Affidavit*

1. #4 of Dwight Kennedy's affidavit is false. Stacy Charland was assigned from 5-2016 not 1-5-2017. On December 2nd 2017, Stacy Charland transferred my case to Jessica Brierly-Snowden as she left the NDS of Harlem firm but that NDS of Harlem retained representation of my case. **Reference EXHIBIT A of 2016 correspondences**

2. #7 signed consent of release was returned to Jessica Brierly-Snowden before the March 23rd 2018 deadline. Also, sworn affidavits were sent to the clerk of the court to provide to the court record of relevant detailed information. The judge was ultimately given the various mailed in affidavits and returned them on the court record to my assigned counsel stating that she was determining them as ex parte. **Reference EXHIBIT O 2018 correspondences and affidavits to the clerk for court record** The affidavits detailed the following:

A. visitation details of 2017

B. information pertaining to my mom's participation in the case

C. responding to the issues regarding David Usdan that Pennsylvania has a 7 year file shredding law as David usdan was told by me on 2-1-2018 interview that "no history reports from PA other than what I provided was accessible per medical and mental health because of that law and which was as a teenager; not carried on into adulthood to the court record titled 2006 psych eval with college transcripts.

I also corresponded several letters to David Usdan between his 2-1-2018 interview and 9-22-2018 second interview. **Reference EXHIBIT O sworn affidavits**

3. Dwight Kennedy asserted in #7 that "without Ms. Wrobleski's consent we could not obtain those records as NYS subpoena were not acceptable in other states" yet NYS-OMH is intrastate and no subpoena was afforded, and although the court ordered Little Flower CFS, they made no release of information to me available, no mail correspondence, no effort to that court order that I complied with to Jessica Brierly-Snowden. When Little Flower CFS was his client to the case matter.

4. #11 of Dwight Kennedy's affidavit fails to address that Dwight Kennedy was informed on that record that his clients mislead and deceived him that as per 1st TPR filing, subsequent to that, information was given to Dwight Kennedy who decided to amend to include permanent neglect, 2 legal standards and that the MHS on record did not substantiate the allegations made by Little Flower CFS; ACS. **Reference EXHIBIT A email to Antonino Esposito, Dwight Kennedy's TPR from 2016 correspondences**

5. #16 of Dwight Kennedy's affidavit is false. NYS-DOCCS failed to produce me due to a snowstorm that would put me on a later bus trip that would not have produced me to court on time, counsel was eventually informed but not directly, 3rd party, due to no phone connection paid for by counsel. The bus trips only took place on Tuesdays' to Bedford Hills CF, there at Bedford Hills CF the bus trips to Rikers Island only took place on Wednesdays, I was scheduled for trip on Thursday to Bedford Hills because Tuesday's bus was canceled due to snow storms and Court was scheduled for the following Tuesday, whereas the prison was ready to put me on the Thursday bus before the Tuesday court appearance. I would have sat for a week at Bedford Hills CF to then be transferred back to Albion CF on a round trip, two, 10 hour bus ride trips chained, cuffed, and shackled in a sitting position. I would not have been able to attend the 2-19-2019 court hearing, as Bedford Hills CF previously told me that they do not do court trips to civil case matters into N.Y.C., that all court trips to N.Y.C would be designated through the bus

trip to Riker's whereas Rikers Island would coordinate the method of transport to court from there.

All parties, including Dwight Kennedy was provided this information, had prior access to information on the procedures followed for prisoner transfers, and was directly informed by Frias-Colon on record subsequently who approved my actions to request video attendance for the subsequent 3-6-2019 court hearing due to the weather conditions in upstate New York, and explained of my signed excuse from prison records as to why I did not attend 2-19-2019 court hearing.

6. #19 of Dwight Kennedy's affidavit is incorrect, including adjourned until 10-29-2019. We had an appearance on 9-25-2019 and an FTC meeting.

7. #20 of Dwight Kennedy's sworn affidavit is incorrect. The cross-exam of Robert Rothman of Sheila Johnson was interrupted within the beginning timeline of 3-2015 from a 12-2014 till 12-2016 timeline for the legal standard. Whereas Dwight's witness, Sheila Johnson was contradicting previous 2018 testimony and 2016-2018 reports; because she had to read from the accurate day to day visit record and reports from conferences that was all in my favor to a case progression that should have happened but was unsubstantially denied. Whereas shortly into the cross-examination of Sheila Johnson, Dwight Kennedy requested to drop the failure to plan for subject-child legal standard without prejudice and pursue solely a mental health legal standard and to permanent neglect cause of actions. Such was granted as was almost all of the opposition requests, whereas most, except for a few, requests made by my assigned counsel during the duration of Frias-Colon to the case was always denied. Frias-Colon granted Dwight kennedy's request without prejudice as he specifically requested, that dismissed Sheila Johnson from testimony but Frias-Colon still used her in her 1-29-2020 disposition and contrary to facts provided; deprivation of cross-exam that she so ordered.

8. #22 of Dwight Kennedy's affidavit is misleading, per above-mentioned including his tendency to mislead in his arguments to win a case, as was #19-#22 also misleading to a one-sided bias, instead of facts of the matter.

9. #27 of Dwight Kennedy's affidavit is incorrect, Ms. Wrobleski's mom testified on 1-28-2020 and disposition was rendered on 1-29-2020 to Termination of Parental Rights result; appealed as of 2-10-2020. Whereas the court of Frias-Colon stated that this plaintiff has schizophrenia despite that none of the mental health service providers and standardized testing to the record including the court's evaluator David Usdan specified that this plaintiff has schizophrenia and in fact David Usdan himself stated contrary to that diagnosis. Note: David Usdan; his office personnel are the only mental illness founders in the records and history about me, all others have a pattern of Anxiety, trauma from separation of my child from me diagnoses in unanimous agreement that was not collaborated in any way. #27 is misleading to the non factual ideas that Dwight Kennedy desires to sway this court to like the other parties in opposition. Robert Rothman requested dispositional hearing on 1-28-2020 and was denied. The case matter has been appealed as of submitted notice of appeal 2-10-2020.

*Additionally*

1. The case matter about my son has been appealed to the Appellate Division First Dept. with also having 2 prior appeals on Appeal and Writ of Certiorari request to the Court of Appeals in Albany that are from the foundational parts of the case matter that 13-cv-08736 WHP Judge Pauley decision in dismissal was that of venue to the state courts, that order was abided by on my part where as I filed 2 appeals from 1028 (2014) prior, and trial conclusion for neglect finding that concluded on 2-3-2015 days after Pauley's order. Appellate Division First Department held those appeals for approximately 5 years; when scheduling orders, civil practice law and rules etc usually give a 9 month to perfect appeal with subsequent hearings scheduled so that usually an appeal wouldn't take longer than a year. My appeals were conjoined, held for almost 5 years and was denied on or about 3-19-2019. Despite numerous correspondences, contact attempts to Appellate Division First Department who everybody on the record of the case knew exactly where I was incarcerated at for 32 months, I was not given any notification, no correspondence from the assigned counsel, and when I was released from prison it took more time for compliance of Appellate Division First Department clerk's office to give me the information I needed to those appeals and the briefs etc to those cases to where I filed and was given a leave to appeal to the Court of Appeals by the Court of Appeals and not by the Appellate Division First Department.

2. Additionally in the Court of Appeals, I was given opportunity to be heard as was all parties therein I specified of this pattern of presenting lies and false information instead of the evidence files, that case opposition parties distorted my image and the information to the court negatively against me and negatively affected my civil rights, due process, equal protections, 14th amendment rights per life liberty and property that parenting is a protected liberty interest of mine that was violated and children and child custody are a protected property right most valuable property of the parent, both of which was violated and caused of a great loss to me for almost 7 years now.

3. Dwight Kennedy and the court was informed of his clients misleading him of facts on the court records of the TPR docket of 7-9-2018, 12-3-2018 and throughout the TPR trial to where he chose to continue in malicious prosecution, abuse of the processes anyway when he could have withdrew and case planned his case to an alternative route in legal compliance irregardless of the objectives of his clients that was illegal.

4. Dwight Kennedy is not a case party to this action because a court appointed lawyer does not act under the color of law Rodriguez v Weprin 116 F.3d. 62. Dwight Kennedy was hired and took orders from and representing Little Flower and their agendas.

5. Likewise for the Legal Aid Society who had a minimal role but was fully informed of the issues mentioned herein of the health and well being of the subject child and actually voted against and refused to have outside services provided to the subject child when Legal Aid Society was

32

charged to represent the subject child yet did not provide zealous representation for the health and well being of the subject child to have qualified services, ultimately the appointed lawyers have no governmental power or authority, the courts and responsible agencies was informed also.

6. The NYS Family Court of NYC LOWER COURT of LIMITED JURISDICTION case is being appealed through the state court system and to the higher courts but is allowed to have a concurrent Subject matter Jurisdiction federal court actionable case and this case is a separate matter of civil rights abuse complaints and criminal activity from the defendants, parties and privy parties affecting and afflicting the plaintiff and her son.

7. This case matter is about the various torts and civil rights deprivations and abuses committed by the defendant and privy parties in regards to matters about me and my son together, so as to retrieve all relief necessary to this plaintiff, and in that the determination may affect the State court case but not the judicial functioning or abilities of the state carrying out its judicial role, because these torts, fraud, and tampering with court record contents and actions that I am alleging occurred by defendants and privy parties was in fact affiliated to the state court case action and within the reality that the state court has made for my life for the past 7 years where I had to interact with such parties that is where such alleged and proven actions have occurred.

8. The action is not a direct case action to a state court case action, contrary to Younger Abstention and or any Abstention that provides that federal court may abstain from an action that would cause an undue interference, standards.

9. Contrary to the hopeful arguments of dismissal put forth against this case action, the NYS Family Court of New York County is a lower court of limited jurisdiction that has the appeals in place; and this federal court I presented federal question and matters to in complaint of per civil rights action that alleges and provides exhibits of the defendant parties responsibility and actions of conduct violating federal law and constitutional rights in a separate federal question to this subject matter jurisdiction court who has Subject matter jurisdiction over federal questions or diversity of citizenship matters.

10. I have sought justice and exhausted state means, agencies and authority, administrative through the state court system and city and state agency and administrative methods who have had the capacity to affect the situation to ensure that it was reprimanded when necessary and directed and supervised over per necessary to keep things in accordance to law and legal practice and from deviation where as such was failed by state level and became a subject matter of federal question.

11. I have sought damages recovery that if the amount is too little or too much a remittitur or adjustment can be made by the court. Either way I contend that I am entitled to damages even if the Court had to comply to not give me my son back the facts would be presented to the intermediate and higher state courts for their state judicial functioning to not be impeded upon

by a federal court and that, up to this point I proved that the Foster Agency maxed him out in foster care as was described to me by Keisha M. on 12-16-2014 when I signed the release of information to her for them to have full access to all the service plan programs that I fulfilled, I proved that the parties have not been honest and have committed fraudulent misrepresentations minimally in the category of fraud, which would entitle me to compensatory reliefs from damages received

12. I am certain that in their described conduct, the exhibits, the law that this court will find that the defendants and their privy parties worked against me, they did not work towards my civil rights or reunification of custody, they caused my rights to be violated or condoned such, they violated or condoned to be violated my Equal Protection Clause rights, defendants and privy parties to my sons case matter case tampered and fabricated reports, defendants directly involved with my sons case matter caused child trauma and they continued inadequate treatment because such was by their own agency staff. All of this information that I provided to this court I provided to the lawyers assigned to me who held such and refused to give such to the court record, recited legal false reasons or ignored me.

### In Response to the Affidavit of Marcia Werchol

1. Marcia Werchol's statement in #1 is misleading, that she asserts that employees of the company she presides over as vice president are "neutral" yet they have taken sides in records that I do have copies of, and that Werchol asserts that her employees who she does not have ability to know of their every actions on or off records are unbiased or non-affiliated to a case party. In fact she is unable to determine if the employees under her authority have committed excesses, office gossip or had interactions with the defendants and their privy parties who are functionally working at the same building.

2. Marcia Werchol's statement in #6 is misleading that the case in itself is ongoing in the NYS Family Court NYC, but that this plaintiff has been removed on 1-29-2020 in an ordered termination of Parental rights, so that this plaintiff is not to participate in any subsequent hearings as mentioned in #6 of the Permanency hearing scheduled on April 24th 2020. PLEASE NOTE that the affidavits of Werchol were signed and dated 1-31-2020; accompanied by documents signed and dated by Chlarens Orsland (ALSO AFTER THE 1-29-2020 dated termination proceeding) with dates of 3-5-2020, 2-26-2020.. (Which shows the exact same relaying of false information that I am filing in this federal court about whether it is mistaken or fraud of Rule 9(a) and 9(b) of F.R.C.P. that has affected my case in their reckless prior state court proceedings), and in gross negligence and intentional disregard for the law. **Reference EXHIBIT P order of termination 1-29-2020, EXHIBIT Q werchol statement and Hoffman order for MHS not David Usdan specifically**

### In Response to Chlarens Orsland, Corporation Counsel's Motion to Dismiss

1. Chlarens Orsland's brief mention of the case presented in Article 78 to the NYS Supreme Court NYC against David Usdan to grant injunctive relief that was not in the limited jurisdiction capability of the NYS Family Court NYC but because of the justiciability and the type of jurisdiction that although NYS Supreme Court NYC is a lower court in itself it holds a separate type of jurisdiction that is not so limited as the NYS Family Court holds that the NYS Family Court could not give the same injunctive relief or trial hearings that an Article 78 gave specific to the State Supreme Court. NYS Supreme Court has 3 types of jurisdiction, Original Jurisdiction, Exclusive Jurisdiction, Concurrent Jurisdiction, and can hear practically any kind of case including in Family Law where if it is a case more worthy of the court to its limited subject matter jurisdiction it can pass such to that court.

Additionally Chlarens Orsland's action in this was misleading to his cause as the following is a brief and true account of that circumstance (**Reference EXHIBIT R NYC Supreme Court motion to dismiss and Opposition of in David Usdan case**)

 2. Corporation Counsel is very ignorant to the facts of what they attempt to argue to this court for dismissal literally as if they resumed from gossip and not actually reading documents.

*In response to Corporation Counsel's Point 1:*

1. The case of TPR concluded on 1-29-2020. **Reference EXHIBIT P**

2. The case filed in this court was of a civil rights complaint matter of abuse, fraud and malpractices.

3. Point 1 does not apply because on page 13 of Chlarens Orsland's dated declaration of service of March 5th 2020 was approximately 5 weeks after the termination of parental rights trial conclusion of 1-29-2020. **Reference EXHIBIT P**

4. The civil rights complaint filed in this court is for separate VIOLATIONS from case related parties where defendants infringed upon my civil rights and committed malpractices, abuses, fraud etc

5. The State Family Court is a lower court of limited subject matter jurisdiction, in that I am correct in my venue with my federal question matter to this court determining if parties actions violated my rights, and to address reliefs, compensation, injunctive reliefs etc that State Family Court has no provisions to provide such service or jurisdiction to matters of federal district court.

6. Similarly, I sought venue of the State Supreme Court that is also a lower court but of unlimited subject matter jurisdiction, where I filed an Article 78 that is exclusively filed in that type of court and not in State Family Court, where I sought to have the defendant David Usdan's 30 page report overturned rendered null and void in injunctive relief. I exposed to the State Supreme Court that David Usdan committed fraud in approximately 12-2018 before his report

35

was released to me on 4-15-2019 in court proceedings. **Reference EXHIBIT R. Chlarens Orslands argument and 2. Opposition motion**

*In response to Corporation Counsel's Point 2:*

1. On court record 11-25-2019, there was a controversy if David Usdan did not meet the criteria to be an expert, but I was then told that he was determined to be such. **Reference EXHIBIT S David Usdan's resume**

2. David Usdan has no mention of formal forensic psychology education and experience on his resume, that in comparison to Dr. Alan Ravitz who was declared an expert, and did not agree with David Usdan, to proceed on record with a formal education background in forensic psychiatry degree obtained. **Reference EXHIBIT T Alan Ravitz resume**

3. David Usdan's resume lists a limited range of experiences and general psychology education pertaining to a select group of individuals such as homosexuals, homosexuals with HIV, some adolescents and parents.

4. This plaintiff contends that fraud, malpractice isn't a job duty or acting in official capacity to be included in quasi-judicial immunity.

5. Younger Abstention does not apply to this case actions because 13-cv-08736WHP and 18-cv-08208VSB are 2 different case filings that 1. Was at the topic of removal and actions at that time, and 2. Is at the topic of civil rights matters of this time period. Of 2 different time periods. **Reference EXHIBIT U of earlier refutation pages to the Younger Abstention**

*In response to Corporation Counsel's Point 3:*

1. Point 3 is refuted by the contents of the facts to the amended that the City agency customs and practices, not written policies, was that they had a position of official capacity over the case party defendants and rejected to address complaints to them not just from me but from the City Public Advocate Office on my case matters that my son and I was being violated by agency staff within their supervision.

2. The following agencies was informed with various complaints detailing the legal malpractices, child being deprived of adequate and qualified services, malicious prosecution actions, abuse of the processes from lower court case related parties, and did a minimal job of relaying to ACS for investigation but ultimately refused and rejected to do a job duty to address the matters complained of to them:
   - The ACS Commissioner
   - The ACS office of Advocacy
   - NYC-OCFS
   - NYS-OCFS

- D.O.I Laura Millendorf special investigations of ACS complaints
- Appellate Division First Department
- Appellate Division First Department Attorney grievance Committee
- The NYS Family Court NYC
- The Commission on Judicial Conduct

**Reference EXHIBITS B and O (2018 and 2019 reportings)**

3. As a result of the above-mentioned listed parties negligence, my case was opened for 6 and a half years, with various abuses that was allowed as a result of no actions against the defendants and privy parties in addition to violating ASFA that gives CPS a less than 2 years timeframe to establish a case and determine permanency rights at or by 22 months in foster care, not 76 months later.

4. I diligently cooperated, complied and completed all of the service plan programs in the 39 months of the case before my incarceration, thereafter 32 months incarcerated I did exceptional efforts, diligence to maintain a meaningful familial relationship even when my son was deprived of supports to be able to reciprocate a family relations or as Santosky v Kramer states when familial bonds are weakened... and completed the ACS Service plan programs a second time during incarceration and provided proofs to Little Flower. Then after released from incarceration and contrary to the sworn affidavits of Little Flower staff, and for almost 5 months until 1-29-2020, I fully complied and provided supportive evidence to Little Flower staff to support my mental health stability, my retention of program informations learned, that under parole supervision I completed various programs and provided those proofs that was supportive to my case of receiving return of child custody to me. **Reference all EXHIBITS**

5. I was incarcerated at 3 years and 3 months after my son was taken and the ACS case original docket began, with the sub docket for TPR filed slightly prior to my incarceration. **Reference EXHIBIT E, K, M, O**

6. During and after my incarceration each party refused their compliance and lied of my mental health to a case win in malicious prosecution. Case parties introduced various false informations to the case record. **Reference EXHIBIT K, O**

7. David Usdan distorted the contents of mental health and records to the case action that he was given to review for his and in his 30 page report submitted in 11-2018, released to me on 4-15-2019 and used in 2019-2020 proceedings and conclusion. Exactly fabricating like ACS law department introduced fabricated assertions that negative things were in the Bellevue file evidence record that was not there in nor did they provide a copy of that page, exhibit, to the court record as proof to what they were talking about. Ultimately its not expected David Usdan would provide copies but the same patterned behaviors, fraud scheme, topic of defendant actions of my civil rights complaint to this court carried into his practice where as he had ability to meet with the opposition parties in normal office interactions because his office was in the same building as the court. **Reference EXHIBIT 3 of amended**

37

8. I assert that it is not coincidence, mistaken, or craziness that parties in opposition of this defendant in the same case matter committed the same pattern of fabrications of documents, replicated over a 6 and a half year long case matter until successful achievement to malicious prosecution case conclusion desired outcome was obtained.

9. The City liability claim is that the agencies responsible and the case related parties acting under color of law (City and state level) was complained to of the malpractices, misconducts, illegal practices and did nothing in a custom and practices covered as said "custom" in Monell case and not specifically limited to "policies" that are written; declared. The agencies was charged with official capacity to intervene in agencies under their supervisory authority and as previously asserted above-mentioned herein this opposition the list of city and state agencies that was notified and proven in exhibits condoned and allowed through inactions, ignoring, refusing to do a job to ensure in an official complaint that the parties are investigated and that the proper reforms are achieved whereas the case was condoned to occur as it did with all the violations therein because city agencies was complained to whos expressed job was to supervisory, investigation, reprimands, reforms etc and they instead allowed  my rights to be violated, that allowed my rights to fair impartial procedural and substantive due process. **Reference EXHIBITS B, O etc**

10. I lost 6 and a half years of parental rights and custody thus far because of the actions of defendants and privy parties actions. I suffered severe distress solely from the separation of my son from me and the abuses performed by defendants and privy parties. I suffered financial losses, financial stability losses because I had to attend to their programs, visits and courts every week, but Mostly in distress was from separation because they wasn't always directly abusive; and there was a lot of hope given when they seemed to play fair and do a job. **Reference Mental Health records in EXHIBITS B**

11. The training of the city parties to the city defendant, to do a job, remain on a job, and not tainted by corruption or personal feelings is a city obligation. It's called quality service.

12. When Appellate Division First Department held my 2014 and 2015 appeals until March 2019, I informed Albany's Court of Appeals that parties lied and fabricated. I was told by a third party that they issued Writ of Certiorari to obtain the complete NYS Family Court case record of mine dating back to 2013.

13. City parties did not react to give any address to problems complained of to them even in giving the subject-child qualified mental health and OPWDD services per serious diagnostic impressions. The Little Flower parties have continued to deprive the subject child of services from past to present whereas they only allowed unqualified, nonclinical, inadequate, "Play Therapy" program coordinated by the Little Flower social worker employee defendant Barbara Simon. Despite that the subject child has DSM-V serious diagnoses that only clinic MHS deals with, not program providers and foster agency make-shift mental health services from LCSW

staff who are not operating in or under an official clinical capacity with a team endeavor of monthly psychiatry review, and psychologist collaborations. **Reference EXHIBITS B, O, K, I**

*In response to Corporation Counsel's Preliminary Statement*

1. This case action merely involves parties of another case action because of perpetrated circumstances.
2. The NYS Family Court is a lower court of limited subject matter jurisdiction that can not function in capacity to the venue of this federal district court, or as previously filed NYS Supreme Court capacity to provide the reliefs specifically sought to indirectly related matters that ultimately would not affect the judicial functioning of a state lower court of limited jurisdiction simultaneous to a federal district courts involvement to a separate, unrelated matter of perpetrated acts in violation of civil rights, federal question matter.
3. This Section 1983 action is not specifically as stated "she alleges that employees of Little Flower, a private foster care agency with custody of her son, have unlawful and unfairly pursued the family court proceeding and violated her rights." but that defendants and privy parties committed actions of fraud, legal malpractice, gross negligence to an official job capacity, malpractices, abuses and civil rights violations.
4. Plaintiff alleges similar to David Usdan also and not the mere, misrepresentation attempt to deprecate the seriousness of the actions of David Usdan by stating "unfairly evaluated her and issued an inaccurate and defamatory evaluation to the Family Court".
5. David Usdan's report is more than defamation, he lied and had no knowledge of legalities even when I explained them to him, like when I explained my 2006 evaluation report that I got my ass beat, or commonly known in Pennsylvania as meaning I was disciplined with corporal punishment. I explained to David Usdan that when I was rarely hit by my step parent for my crimes, it was in compliance with Pennsylvania's spanking laws being that corporal punishment was legal and was in the public school system while I was growing up but was taken away when I was in approximately 8th grade. I explained corporal punishment is not domestic violence. In reports by David Usdan to the court he silenced these Full Faith and Credit Clause interstate state government respect claims and specified that that corporal punishment was growing up in a house of domestic violence, despite that domestic violence is a spanking on the backside but constitute violence and abuse actions of beating, biting, hitting, punching, kicking, verbal and psychological abuses etc. Additionally in his report he fabricated that I confessed mental illness (BPD) symptoms to him that I know I never felt and never told him of such things, was his action to make me fit a Borderline Personality Disorder profile criteria so as to have that diagnosis. The honest services and testing of other long term MHS providers to the case record provided a genuine absence of. Anything in records that did not have a storyline to it, attributed such directly to me as the source or records when David Usdan created a story to fill in the blanks to a negative conclusion. No other mental health records provided behaviors or stories similar to David Usdan's reportings in my case matter or prior to my case matter in my life.

6. The Younger Abstention was previously refuted to Hon. Louis L. Stanton in this case matter, reference the 118 page reply or **Reference EXHIBIT U: Younger Abstention refutation pages per 118 page reply to Louis L Stanton's calling into question younger Abstention to the case matter**

7. The Family Court TPR proceedings have finished and have no upcoming dates scheduled for my appearance to the record, or even allowing me to attend the 4-24-2020 permanency hearing. This occurred 5 weeks prior to Corporation Counsel's 3-5-2020 dated motion to dismiss. **Reference EXHIBIT P**

8. The ignorance to case facts from Corporation Counsel and other parties is the exact matter of Rule 9(a) and Rule 9 (b) Fraud and Mistakes assertions that this plaintiff is bringing and shown a pattern of in defendant parties and privy parties actions.

9. Again Corporation Counsel brings a ripeness allegation against me as occurred in previous NYS Supreme Court Article 78 action against David Usdan, when the reality is these actions have a statute of limitations that Corporation has seemingly disregarded and expected me to wait 6 years in the Family Court case, and years after for results that the defendant parties actions, and the privy parties actions have fabricated over. Corporation counsel has tried to eliminate venue of anything co-related to the Family Court matter to be only the jurisdiction of the Family Court when the Family Court is a lower court of limited subject matter jurisdiction and does not have authority to take different types of cases or grant the reliefs of different types of cases that other courts provide. Additionally Family Court has offered the exact same results and reactions in 6 years sticking to the curriculum and has given full credits to job holding agency parties in opposition of the respondent who committed fabrications, and lied on the court record and was caught in those lies and fabrications. Corporation Counsel does not have power and control to determine where a case should be at, and has had no regard for the actual lower court limited jurisdiction position of the Family Court and the statute of limitations surrounding and affecting incidents of separate civil rights, fraud, abuse, waste of government funds etc that affect all types of state and federal penal actions except capital offenses such as murder. **Reference EXHIBIT R per ripeness**

10. The NYS Family Court has concluded the TPR trial on 1-29-2020 to a termination of parental rights order and has closed the court's future proceedings to exclude non parties as was told to me by my assigned counsel and thus is no longer available to me pending appeals. **Reference EXHIBIT P**

11. Immunity does not cover officials violating clearly established Constitutional rights or federal law, which is unconstitutional to violate

12. Immunity provides that "so long as officials are acting within their scope of their duties". Within the scope of the duty per the court order of Douglas Hoffman for the FCMHS to perform an evaluation, scope of duty did not cover fraud, malpractice that is clearly visible

13. I contend that David Usdan should and would not qualify for immunity that the FCMHS itself qualifies for the immunity as per the court order from being sued for damages and fits the criteria of acting within the scope of the duty, but that David Usdan himself had a choice in the matter and was not under a compulsion order to produce services. In fact,

when and at any time David Usdan felt that he could not fulfill the court order fairly, or professionally, he could have excused himself from the case in request to the judge or his administrators to seek a reassignment of personnel to fulfill the court order. Instead of deviating to fraud and malpractice, away from the scope of duties assigned to the FCMHS entity, firm (corporations are considered citizens). Similar to how a judge would recuse themself, a bailiff can be reassigned also, persons who are covered under the immunities clause.

14. At any time that David Usdan felt that he could not control his emotions and do a job he could have asked NYC Health and Hospitals Corporation MHS office Vice President Werchol to re-assign the case court ordered to the office, to another staff member. **Reference Werchol declaration EXHIBIT Q his superior**

15. David Usdan had 2 interviews of 2-1-2018 and 9-22-2018, where he notified the court that he was unable to come to a conclusion, not ready, needed more information from other records that was irrelevant to the case that I provided him with, and literally took over 7 months deliberations on the matter of an evaluation that I sat the first time in for 6 hours with no food or water and was woken at 4am to travel to and attend from jail, that I gave him a meticulously detailed timeline of my entire life from 1980 until that moment in time, and answered all of his questions logically and rationalized what exactly I was thinking when I did things. That on 9-22-2018 David Usdan's second interview requestioned the same things gathered from the first interview and was given the exact same answer because my truth didn't change. I provided a detailed timeline of the contents of both interviews to the NYC Supreme Court Article 78 12-2018 filing before I was even given a copy on 4-15-2019 of David Usdan's report, proving my credibility against his, I have been treated unfairly because I do not have degree credentials and a job position equal or higher to defendants and case parties which is classism discriminations efforted against me and part of this complaint matter. **Reference case Wrobleski v Usdan 100158-19**

16. David Usdan performed both interviews with me at the Family Court building where he could have brought a recording device to help his memory and substantiate the entire matter but he did not.

17. David Usdan had options and was not under an imposing obligation from the court that personnel like Court officers are under, per immunity contexts and criteria.

*In response to Corporation Counsel's Statement of Facts*

1. Plaintiff did not and is not using this court to challenge a then or not ongoing Family Court proceeding or to use this federal court to impede on a state court's judicial function, but to bring a federal question matter civil rights complaint and fraud complaint that merely involves parties of my Family Court matter

2. Corporation Counsel's statement of facts is laden with misconstrued, misleading information

3. Barbara Simon did not recommend the subject child to qualified services and continued to render insufficient, inadequate services from herself and kept him in her caseload. **Reference EXHIBIT I, K**

4. To say that Little Flower collaborated with David Usdan is misleading, I explained that Little Flower staff SUBSEQUENT to ACS staff did case tampering fabrications to cover the evidence record contents by issuing reports with false information (in comparison to the evidence record) against me that was not true. Subsequent to that David Usdan utilized the same method which may or may not have been made obvious to him in the records that he reviewed, but subsequent to David Usdan was Legal Aid Society who issued fabricated verbal reports and inputs to the court transcript record after the completion of David Usdan's testimony where as before they only remained in unison, biased to ACS's decisions and agendas, asserted pro-adoption stances at the expense of the legal standards, and refused zealous representation of their subject-child clients mental health and well being qualified services needs and became confused that the subject child was doing well because monthly fabricated court reports from Little Flower staff asserting that the subject child was doing well but the bi annual reports and the reports from mental health and education records depicted that he was deteriorating in the foster care from reports at 24 months foster care til present (after the ASFA of 1997 15-22 months foster care criteria was abandoned by defendants and privy parties). **Reference EXHIBITS I, K, EXHIBIT 3 of the amended Ms Gomez refuses to take her medication (I never had that last name and was not prescribed or offered psychiatric medication at Bellevue)**

5. David Usdan described my anger at his provoking actions and causing me to have anxiety attacks as aggression and parties contended that aggression is illegal; violent behaviors despite that this defendant has only been assertive, aggressively assertive to verbal reprimanding actions only when others try to lie or steer the topic away and has never committed violence as it's true definition is towards the defendant parties, Family Court case related parties, and has always resorted to appropriate verbal only assertions (except on 9-12-2014 incident) even if the case parties had to be interrupted and hated what I had to say.

6. Yes Sheila Johnson fabricated court reports and told the court in her 6-20-2018 testimony that this plaintiff was "violent in 2016 always at her" did not report such to the police or the court or anybody prior to her 6-20-2018 changed testimony and ultimately rendered a procedural due process of law enforcement and court investigations or retrieval of any form of evidence, subpoena of the agency video surveillance as impossible, except that she reported to the ACS Connections log record and court as good visits **Reference EXHIBIT E and EXHIBIT A**

7. Similarly Little Flower staff lied to the court stating that I punched the supervisor Keisha Malphurs in the face (to the court on 12-2013 or 1-2014 court appearance requesting visit suspension) wherein I immediately sought subpoena of the agency lobby camera and the presiding judge of that time ordered an investigator to review the cameras after I asserted I never did such a thing and why wasnt cops called if I did.

8. David Usdan also distorted contents of the records on the Family COurt case to collude allegations of behavioral health consistent to ACS petitions and Amended of 2013 basis of removal.

9. This case matter, contrary to Corporation Counsel's assertions that all allegations arise out of a Family Court proceeding is not true and that this case action brought is not using (in repetition to 13-cv-08736WHP) this federal court as a platform to vent on but that this matter is a true and valid federal question matter, civil rights complaint into deeming defendant and privy party actions as having violated and contributed to violating this plaintiff's civil rights and federal law (fraud practices, Rule 9 (a) and (b))

*In response to Corporation Counsel's Prior History Section*

1. Plaintiff filed an Article 78 in NYS Supreme Court NYC in 12-2018 approximately after the second and last interview with David Usdan who said to my face that he would say I have BPD and Bipolar to the court and a long history of mental illness that I refuted again to him stating I do not have a long history of mental illness I have 2 separate incidents of mental health services, after misconstruing my 2006 evaluation report MHS history of 2 separate matters 1. As a teenager that did not carry on into adulthood provenly, and 2. An adulthood anxiety diagnosis in 2006 at age 26 that David Usdan said was BPD and Bipolar, whereas that specific evaluation gave a letter after I discussed permission to testify to a court of his report and findings that he specified to be contacted for his testimony to testify of his own report that he was contracted to do from a federal agency about my capacity to go to school for a federal level program that also had attached my college transcripts 3.29 G.P.A and that I was on Dean's list most of the time. That was detailed to the NYC Supreme Court before the 30 page report in question was released to me on 4-15-2019. **Reference EXHIBIT R and Reference case Wrobleski v. Usdan 100158-19**

2. In Article 78, I requested that David Usdan be deemed as the exhausted administrative remedy as he self-proclaimed to the record that he was the Director of that FCMHS office. And that the court proceed in Article 78 matter with the relief sought to overturn David Usdan's decision report and render it null and void

3. In Article 78 I established that the agency David Usdan worked for was from the New York City Health and Hospitals corporation and thus a corporation subjected to Article 78 of the CPLR 7800 a corporate entity that can be subject to an Article 78 matter.

4. Carole Edmead of the NYC Supreme Court, presided, and held the exact same viewpoint as Corporation Counsel Chlarens Orsland who was assigned to the case from Corporation Counsel's office. Held that no other venue had ability to deal with David Usdan in my case matter except for the Family Court, that included investigations, reprimand, due processes, and unethical conduct.

5. Carol Edmead put the Article 78 subject matter in the jurisdiction of the NYS Family Court, a lower court of limited subject matter jurisdiction that does not offer Article 78 of the CPLR or the specific injunctive reliefs to render on an accessible docket record that

such 30 page report determination be rendered null and void and overturned to all affects that it could possible have now and in the future.

6. NYS Family Court NYC maintains limited subject matter jurisdiction that inculcates matters from the Family Court Act, Domestic Relations Law, Social Services Law and some Civil Practice Law and Rules aspects, in a limited capacity and not entirely as Domestic Relations Law grounds are shared between NYS Family Court and NYS Supreme Court jurisdictions. Family Court is exclusive to Child Protective Services case matters. David Usdan is not Child Protective Services. Family Court shares jurisdiction over child custody cases with NYS Supreme Court

7. Judge Edmead is not a justice, she is a lower court judge

8. Judge Edmead agreed solely, and not of her own determination, to what Corporation Counsel provided in motion to her,

9. Judge Edmead's decision does not create case law or contend suddenly that her decision is legally binding to all other courts without regard to their findings if such is in fact legally binding and without calling into question or proposed to turn a blind eye to the matters called into question because of her previous determination. That ethical conduct is reserved solely for U.S. Supreme Court justices that Edmead is far removed from.

10. Judge Edmead is a lower court judge, whereas NYS Supreme Court is a lower court of unlimited subject matter jurisdiction and thus under those terms The venue to Judge Carol Edmead was a qualified venue.

11. NYS Supreme Court hears cases on the Family Court Act, Social Services Law, Domestic Relations Law but sends cases specific to child protective services, and child custody of unwedded mothers to the venue of the Family COurt's limited subject matter jurisdiction

12. The matter presented to Carol Edmead was a separated matter of Article 78 action and reliefs sought against David Usdan from a corporation to over turn his agency decision and render it null and void (to the capacity that another would have to be performed in order for that agency to fulfill its court ordered legal obligation) as is specific to the purpose of Article 78 of the CPLR That created a special circumstance upon which NYS Supreme Court venue could be sought and because Article 78 is not in capacity of the Family COurt nor the ability to grant the same reliefs whereas through Family COurt the report would remain on record.

*In response to Corporation Counsel's standard of review and Extrinsic material and Rule 12(b)(6)*

1. The FCMHS Werchol statement and Article 78 decision are not evidence and are not relevant information in support of why this court should dismiss my federal question matter civil rights complaint

*In response to Corporation Counsel's Point 1 case law in support of this plaintiff's case and not their argument*

1. Removal of Jurisdiction can occur and sometimes exists for the defendant of a state case to move a civil action filed in a state court to the U.S. D.C., 28 U.S.C. Section 1443 et seq. Titled Civil Rights Cases, Removal of cases from state courts was previously addressed to this federal district court in this case matter that this plaintiff requested the state court action to be transferred to federal court for trial purpose to the state interest matter under the explanations that defendant and privy parties was violating this plaintiff's civil rights to a malicious prosecution affect within the court proceedings and case matter that was subjected to the state Family Court, and as per Rule 9 of the Federal Rules of Civil Procedure 9 (a) and 9 (b) Fraud and mistakes was continuously being perpetrated against and in gross violation of this plaintiffs civil rights and the Family Court case matter to a fixed outcome that malicious prosecution focuses on the one-sided win agenda.
2. This plaintiff did reach out to federal court in complaint filings and consistent to case law cited by Corporation Counsel per this section Point 1,
3. This plaintiff sought injunctive reliefs described of returning my son to me but consistent to above-mentioned filing actions of seeking removal of jurisdiction per Rule 9(a) and 9(b) violations to the case record and this plaintiff
4. Plaintiff suffered denial of 14th amendment protected liberty interests and child custody protected property interest per deviations of fair trial, defendant and privy party actions of fraud, misconduct, malpractices, abuses etc.
5. Parties under color of law is that pertaining to one or more persons using authority given by a governmental agency from city, state, or federal to act in unison with city, state, federal agencies; governmental agencies policies, decisions etc. including legislation. To violate that is when those parties act outside of their official duties to deprive a person or conspire willfully to deprive a person of any right protected by the Constitution or laws of the United States.
6. The actions of the City privy parties was that if they choose to get involved it is under their individually decided terms and not in accordance to a job function, policy, etc but that they do not necessarily have to get involved no matter what the circumstances of complaint matters are, is a custom and practice introduced into my case matter as a course of action, whereas they often said to tell your lawyer, where they again made up their own custom and practice. **Reference EXHIBIT B and O**
7. This defendant named the defendant parties, Little Flower of private SUBCONTRACT to ACS the City agency of governmental functioning under color of law. Little Flower also acts under color of law to abide by FCA, DRL, and SSL statutory laws to their job function as a NPO agency who is paid through foster care funding. ACS had official capacity, and was supervisory of Little Flower but both acted under color of law and mislead a state court action against me. Additionally ACS replied to address all complaints solely to Little Flower and not them or the other city and state agencies to that affect of NYC-OCFS and NYS-OCFS. **Reference EXHIBIT B and O**
8. ACS gave Little Flower CFS authority to act under color of law in their case planning and case involvements as a subcontracted agency under ACS

9. ACS Commissioner had the official capacity to withdraw the case in light of a review that provided grounds for a case was no longer present or did not exist, when provided reasonable proofs, but instead they chose to continue in malicious prosecution

10. Each party acted under color of law and used their position to not fulfill job duties consistent to legislative provisions but to provide false information to the state court in malicious prosecution unsubstantiated opposition of the evidence on record.

11. As a result my constitutional rights and privileges were violated and so was laws pertaining to fraud, professional misconduct, legal malpractices on their part.

12. This plaintiff sought Section 1983 and compensation remedies for the deprivation of rights; per City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985); Annis v. Cnty of Westchester, 136 F.3d 239, 245 (2d Cir. 1998)

13. This plaintiff's constitutionally protected liberty interest in the care, custody and management of my son was violated by defendants and privy party actions and lack of; per substantiated Southerland v. City of N.Y., 680 F.3d 127, 142 (2d Cir. 2012)

14. This parent provided complaint to this court of deviations from procedural due processes, that this parent assertively informed the state court who the presiding threatened me to throw me out, censured my participation, often silenced me and reacted with hostility at any of my participations throughout her time on the case.

15. ACS acting as a state prosecutor; a petitioner of the case matter, among various roles in the case matter, as a state actor under color of law was informed in letters, in verbal confrontation of presenting facts to thm and on the actual case record, and they refused to withdraw their case and labeled my information as mental illness.

16. In description of the defendant and privy party actions here in in the opposition motion; and amended complaint, I believed that I fulfilled proving that the facts show that the state action was so egregious, so outrageous that it may fairly be said to shock the contemporary conscience.

17. This plaintiff provided extraordinary circumstances to file a separate civil rights complaint action involving case related parties, in refutation to Younger Abstention, Younger v. Harris

18. This case is not the same as 13-cv-08736WHP removal and complained of matters, this case matter is of actions after the 1-31-2015 Judge Pauley dismissal and some initiated near the time of that dismissal actions that caused a deprivation of rights, liberties and diminished quality of life.

19. This federal question matter and civil rights complaint is not mandated that the court abstain from hearing this matter under Younger Abstention. The Supreme Court articulated a strong policy and not an impossibility. A strong policy against federal court interferences in state court matters absent extraordinary circumstances. In that it is not completely shut off to a complete bar.

20. This court is permitted to enjoin upon a case matter that has parties of another case but is not directly interfering in the states ability to its judicial functions, impeding upon a state case without lawful reasons, and can enjoin a co-related case that is not interfering but is per its subject matter jurisdiction of federal question and civil rights complaint that the outcome would not affect the state court but would have an indirect co-related affect

because if it is so decided that the parties did commit violations in this federal court, the state court may not ignore that although it is not directly affected in orders and interferences or overtaking its jurisdiction

21. City parties apparently fear that such would have an impact on state proceedings if a finding of civil rights violations and fraud is found against the defendant clients

22. This matter is not an exercise of jurisdiction over a Family Court civil enforcement proceedings and is not interfering in state courts ability to perform their judicial functions, per Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) and Sprint Communs., Inc. v. Jacobs, 571 U.S. 69, 73, 78 (2013); Falco v. Justices of the Matrimonial Parts of the Supreme Court of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015)

23. This case is seeking monetary damages and the results would provide proofs needed to higher court Court of Appeals that this plaintiff would not need direct injunctive order of relief of return of my son from this U.S.D.C to impede on the Family Court's ability to perform judicial functions to return my child to me; per Morpurgo v. Inc. Vill. of Sag Harbor, 327 Fed. Appx. 284, 285 (2d Cir. 2009); Younger notion of comity 401 U.S. at 44

24. The state court proceedings are continued to a separate issue of subject-child absent this parent who was issued TPR order against me and thus this plaintiff has no adequate opportunity for judicial review not limited to limited and specific appeal rules and grounds that are appeal matters secured on the court record subject to appeal, but judicial review in lower court to hear the entirety of a case matter who has subject matter jurisdiction of federal question per civil rights complaint matters and whereas the state court has previously refused to address complaint matters

25. In this instant case, the state court proceeding is terminated to an appeal phase that the appeal is subject matter to matters secured on the case record being appealed and limited in that capacity and has history of intermediate Appellate Division First Department foul play of holding appeals for 5 years which provides an imminent threat of ongoing civil rights abuse threat

26. A child custody proceeding is not exclusive to state courts only. Reference Santosky v Kramer

27. This plaintiff has a valid claim of federal question per civil rights complaint to this courts subject matter jurisdiction

28. Chen Xu v. City of New York, No. 19-cv-3760VSB was not similar to this case matter as the claims was completely different as was the totality of circumstances including proofs made of a risk of harm because Chen Xu was said to have Munchausen Syndrome By Proxy behaviors proven in a series of past medical history records, plural records meaning more than one.

29. It is a fact that state parties do retaliate against seeking city, state, federal complaint interventions because they will proceed in their choices unless they are successfully complained against where the place to complain, to intervene, reprimands and reforms the circumstances in their totality.

30. Corporation Counsel didn't leave their sorority hazing and bullying days behind them that they seek to insult me and try to equate me to Chen Xu's guilty case, wishing that I was

guilty wont make it happen and there is a difference between if I was actually guilty of some forms of child abuse or neglect through inabilities from the fact that I was not, nothing was presented substantially to that affect

31. In my case matter, filing a civil rights complaint under federal question and providing proof, evidence to the court to decide pertaining to the violation of my civil rights is not a collateral attack on N.Y. family Court or case parties and is not a scandal attempt as has been always and ritualistically the attempts that Chlarens Orsland of Corporation Counsel has UNSUBSTANTIALLY accused me of with no description of exactly how I did such, whereas I am describing exactly how defendants and privy parties did things that constitute other things.

32. The Werchol declaration is false and misleading, that is the state proceeding has not continued with this plaintiff and is irrelevant to the federal question matter civil rights complaint of violations defendant parties and privy parties committed. **Reference EXHIBIT P**

33. This case does not satisfy Younger Abstention merely based on a requested injunctive relief of return of child custody and excluding the compensation and civil rights complaint matters etc. a requested injunctive relief of return of child custody which is injunctive to liberty and property right under 14th amendment **Reference EXHIBIT U**

34. Corporation Counsel's Younger Abstention argument failed because:
    a. Plaintiff asserted interferences of substantive and procedural due process among other civil rights violations and allegations of the crime of fraud, that my son should not have been held to foster care and foster care custody. That plaintiff was given procedural protections in court processes of types of hearings and still proved in complaints that the removal of custody and rights was fraudulently tampered with and thus an unconstitutional deprivations of 14th amendment protected rights occurred; (re Southerland, 680 F.3d at 152 and Okin v. Vill. of Cornwall-on-Hudson Police Dep't 577 F.3d 415, 431 (2d Cir. 2009)
    b. Case parties, defendants and privy party actions was egregious, outrageous and not a scandal as attempted arguments from French& Casey firm Ms. Kimundi alleged

*In response to Corporation Counsel's Point 2*

1. Plaintiff alleged that David Usdan committed fraud and malpractice, with a specific ordered duty from the Court that the ordered job function and agency it was ordered to may be protected in the immunities method but not the illegal fraud and malpractice conduct

2. Corporation Counsel is implying that this court and others should legitimize professional misconduct, malpractice and fraud actions under federal statute and through case law that would allow persons like David Usdan to be granted Absolute Immunity from prosecution, lawsuits after hired and fulfilling a job performance wherein they provenly committed honest service fraud, deception, and deliberate and intentional acts of fraud, and that also through case law when a person does the right think and files complaints to alert authority agencies to the misconduct that if they decide to ignore or refuse those complaints that no federal court legal

48

action can be brought for damages as a result of their actions and lack of that would turn their job function into a whole personal discretion

3. Corporation Counsel's page 8 argument alleges immunity covers illegal conduct of person's given direction to perform a specific task, evaluation not a direction to commit fraud, an evaluation that at any time David Usdan felt he could not be fair and could not do as the court ordered and is expected to be done impartially, justly and not in professional misconduct, David Usdan could have excused himself as he was not directly ordered but the agency he worked for was. **Reference EXHIBIT Q order to MHS and not David Usdan, David Usdan's name was not on the order**

4. Honesty with an employer is that if you can not do the job you can go to your supervisor for help or reassignment of somebody who can or is more qualified

5.Absolute Immunity defense relies on the nature of the function performed, per Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005)
6. Under the doctrine of judicial immunity, judges and certain judicial authorities such as special referees are protected from civil liability through extension to individuals with actions functionally comparable to those of judges. Per Antoine v Byers & Anderson, Inc., 508 U.S. 429, 435 (1993) and Imbler v. Pachtman, 424 U.S. 409, 423 n.20 (1976)

7. David Usdan is an employee of NYC Health and Hospitals Corporation, the existence of Article 78 of the CPLR challenges administrative decisions to an injunctive relief that includes overturning, rendering null and void such decisions

8. I am contending that the Second Circuit immunity extended to court appointed officials does not apply to David Usdan also because he was not directly ordered to do the evaluation for the court, the court ordered FCMHS to do such and that was in the discretion of FCMHS to order David Usdan to do such and not somebody else, or somebody who was already experienced with the case matter from prior experiences.

9. Bradford Audio Corp. v. Pious, 392 F. 2d 67, 72-73 (2d Cir 1968) brought into question a challenge in conduct and not an allegation of fraud and malpractice.

10. Corporation Counsel's assertion of Supreme COurt has not specifically address the question of whether judicial immunity applies to court appointed officials is wrong because in my case matter of Article 78 Wrobleski v Usdan 100158-19 NYS Supreme Court did, as a lower court, create an order to that affect; result. Whereas maybe Corporation Counsel meant SCOTUS as in Supreme COurt which that may be true there.

11. I am not seeking to have a federal court impede on a state court actions solely on the grounds of procedural flaws under the guise of civil rights violation. I produced more than a

violation in contentions; I've produced abuses and illegal activities, fraud and malpractice claims even in the affidavits to this court.

12. Corporation Counsel has tried to deprecate the value of my case action to be baseless, meager, weak allegations and a distortion from its true content. Reference Chen Xu case.

13. NYC agencies have created a custom and practice of pass the case back to the Family Court instead of reprimanding, reforming, addressing complaint matters to them of professional and legal misconduct, malpractice and abuse, illegal conduct actions from parties within their capability to address and address them as an agency superior to another. As provided by Commissioner Hansell who was written to several times to review my case, ACS fabricated, malicious prosecution behaviors etc and Commissioner Hansell refused to address and review of staff beneath his official capacity to determine the potential of withdrawing the case etc.

14. The FCMHS agency was judicially appointed to assist it in its judicial responsibilities and not an employee to fabricate and impede his personal decision onto the court through fabrications and distortions (per Dilacio v. N.y. City Dist. Council of the United Bhd. of Carpenters, 593 F. Supp. 2d 571, 578-79 (S.D.N.Y. 2008)

15. I am contending that David Usdan's actions of issuing a fabricated report are of Honest service fraud not covered by quasi-judicial immunity and that he was not under direct immunities that the court order was directly to the FCMHS agency and not specific to David Usdan wherein the agency still held the official capacity to terminate his job position based on his conduct but chose not to, and is a compromise to his ability to be enjoy immunities.
**Reference EXHIBIT P**

*In response to Corporation Counsel's Point 3*

1. Monell does not solely rely on written policies and I expressed customs and practices
2. NYC HHC is a city entity responsible for the medical and mental health as a corporate entity, administrative decisions regarding quality of services regarding the underlying agencies and acts under color of law, as does ACS and its subcontracts, DOI, NYC-OCFS, Attorney Grievance Committee etc all part of the City infrastructure parties and administratives acting under color of law and of my City liability claim whom agents of committed injuries to my constitutional civil rights and causation of that and deprivations in their failure to react customs and practices and defendant actions complained of (per Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) and Monell v. Dep't of Soc. Servs of the City of N.Y. 436 U.S. 658 (1978)
3. It is not evidence in the complaint that of a subject matter of believing (an internal quality that is not external unless directly vocalized) that this complaint, to the misconstruings of Corporation Counsel, to be more than a federal question matter of a civil rights complaint action, but to be paranoia without evidence that the plaintiff believes that Usdan, case

parties to the Family Court proceeding are biased, hostile, unfair and abusive towards Ms. Wrobleski

4. Because the complaint involves complaints to various agencies under the City network and various persons that created a pattern of providing the same responses, behaviors, practices which resulted to be defined as local customs and practices included to Monell and not limited to written policies only with exclusion of unwritten actions. (per Walton v Rubel, 2018 cites "custom" per policy or custom.

### In Response to Ms. Elizabeth Kimundi's Motion to Dismiss

*In response to the Preliminary Statement*

1. This case action is not a scandal, impertinent or irrelevant allegations pursuant to Fed. R.Civ. P. 12(f) but is a federal question matter of a civil rights complaint action providing allegations that not only your clients already lied to the court about and with proof given from me but  allegations accompanied with evidence of fraud, and civil rights violations that resulted from your clients actions and caused harm, deprivations, losses etc.

2. It is not a matter of ripeness to say that a civil rights violation that occurred within a 3 year statute of limitations filing period, in a 6 year long overripe Family Court case that included Appellate Division holding 2 conjoined appeals for approximately 5 years to then say a longer wait until ripeness may or may not occur is due.

3. Little flower is a private corporation that is subcontracted to ACS who is a City agency under color of law, previously described herein acts under color of law in unison, and committed obstruction of justice with other defendants and privy parties acting outside of their official capacities to create a harm, corruption, deprivation etc in their actions of fraudulent misrepresentations and fabrications. Reference federal administrative agencies definitions that governmental authority extends to agents thereof and any person acting on behalf of. With emphasis of absurdity.

4. Little Flower was a participant and under orders in a chain like fashion descending in and out of ACS and the Family COurt that acts under color of law, whereas Little Flower also contributed to those orders and decisions in fabrications, fraud, deviated from practices (acting outside of their capacity to create a harm and in illegal conduct etc) that would be like quasi- functions with a state interest governmental agency in the department of Child Protective Services in accordance to Family Court Act, Social Service Law, and Domestic relations Law capacity

5. In the Preliminary statement that Ms. Kimundi stated "Pro Se plaintiff's second amended complaint alleges violations of various constitutional rights by private defendants and public defendants in an **unrelated** Family Court proceedings" Ms. Kimundi acknowledges that this federal complaint is unrelated to the Family Court proceeding itself but alleged in a Family Court proceeding which the actions predominantly did not happen at (but affected) the Family Court or during proceedings but was agency actions outside of the court place or events that contributed to an influencing of the Family Court against this plaintiff illegitimately.

*In response to Ms. Kimundi's statement of facts*

1. This pro se plaintiff was a respondent in a concluded Family Court T.P.R. proceeding that ordered termination of parental rights that is now subject to an intermediate appeal process to the same Appellate Division First Department that held the previous co-related docket appeals for approximately 5 years to then deny them without any report of review of fact to explain why and has not abided by the memorandum that all 4 appellates abide by the rules and practices of the Fourth Department (that schedules appeals timely with 9 month perfecting of appeal time period then subsequent scheduling orders that would hear a case within a year approximately) **Reference EXHIBIT V Appellate 3-2019 decision pages**

2. The Family Court proceeding is of two concurrent dockets 1. Was filed by the ACS Commissioner on behalf of the subject child under the age of 10 years old, and 2. Was a termination of parental rights filed by Little Flower.

3. The pro se plaintiff commenced a Section 1983 litigation action prior to the outcome of the unrelated Family Court proceeding in venue of a federal district court per subject matter jurisdiction and secured the complaints on court record verbal assertions and proofs given to the Family Court assigned counsel representing me to give to the Family Court and case parties an opportunity to amend the situation along with securing my appeal information contents on court transcripts where as the NYS Family Court lower court of limited subject matter jurisdiction afforded no address to these federal district court complaint matters.

*In response to Ms Kimundi's standard of review*

1. This plaintiff's complaints was of allegations supported by evidence and not mere "legal conclusions" ( previous evidences was sent to the federal district court as exhibits during my incarceration ) and the intent in subsequent actions from the plaintiff is to fully prove the allegations this plaintiff set forth

*In response to Ms Kimundi's Point 1*

1. The plaintiff was a respondent in an unrelated Family Court proceeding to this subject matter proceeding
2. Little Flower is or is not an NPO, but is subcontracted to ACS in subservience to governmental Child Protective Service interests and functioning of foster care, collaboration on state court cases, influencing Family Court decisions and ACS decisions within their reportings to those state agency and courts for or against respondents to a quasi-governmental functioning position. **Reference EXHIBIT W City Comptroller Audit of Little Flower's funding information subcontracted to ACS**
3. Little Flower as described in all of plaintiff's complaints, allegations, evidence and exhibits has not availed this plaintiff all opportunities and has in fact availed barely any opportunities except superficial court compliances to reunification of custody.

4. This plaintiff succeeded in all opportunities given to reunification of custody and defendants; privy parties worked against that thus depriving this plaintiff of legitimate impartial procedural and substantive due processes that others are afforded without prejudice, malice, hostility, in equal protections of the law.

5. During the proceedings, under pretense of disruption, mental illness and behavioral health allegations against my character, this plaintiff was silenced and censured from participating on record, was threatened and reprimanded by the judge who was arbitrary towards factual information offered from me and pointed out of the evidence on the record to her and the court. Arbitrary in its meaning of not giving a reasonable reaction or response to facts provided. This plaintiff was screamed at, ordered to only speak through assigned counsel whom plaintiff did effort to speak through but did not fully comply to present all the objections, facts, evidences provided to them and submitted for the court's consideration that even was told to the judge who promised he would and ordered that such was to happen (eventually). However, the assigned counsel, upon my request, returned the evidences to me after the 1-29-2020 trial conclusion. **Reference EXHIBIT J**

6. The plaintiff has been notified of the 4-24-20202 Permanency Hearing scheduled but was informed on 1-29-2020 as plaintiff was read TPR order and dismissed from the remainder of the proceedings that 4-24-2020 is a closed court session and plaintiff is not allowed to attend or be heard at.

7. As Ms. Kimundi acknowledged the Family Court proceeding is akin to criminal prosecution, this plaintiff as previously asserted to this court has been subjected to malicious prosecution; illegal abuse and is violated from enjoying constitutional protections, liberties and quality of life likened to a criminal case threatening losses from parties and privy parties to a Family Court proceeding that is **<u>unrelated</u>** to this complaint matter and is drawing into question the actions of defendant; privy parties and not the "ongoing" state proceedings.

8. As previously asserted, the Younger Abstention does not apply to this case matter complaint and federal question issue and this courts proceedings of litigation on this case complaint matter is not directly interfering or in any way impeding on the state court's ability to perform its judicial function in.. [an ongoing] custody proceeding] per page 6 and 7 of Ms. Kimundi's case law citations (plural). Also why would I be penalized for doing legal interferences through a federal court against parties who abused their job position to create illegal interferences in the Family Court proceeding against this plaintiff. The difference is that I am not doing an illegal action like the defendants and privy parties did or condoned, I am doing a legal litigation action to rectify the matters the defendants created.

9. This court with all aforementioned reasons should abstain from the Bukowski precedent as this matter is in no way related or similar and should further abstain from any dismissal that the opposition, defendants, have already brought

10. This case is not in any way factually similar to the Chen Xu case, not just because Chen Xu was found to have Munchausen Syndrome By Proxy or was proven guilty in a series of medical records of her actions compromising her subject child, where as this plaintiff

is and was not but because the civil rights allegations and complaint is nowhere similar or of the same.

*In response to Ms. Kimundi's Point 2*

1. Ms. Kimundi's argument of ASFA is misleading to leave out that through ASFA, Child protective services are given a timeframe of the **FIRST** 15-22 months in foster care procedurally to have established a case and determine at or by 22 months the subject matter of Child Permanency Rights and needs of a child to either be returned to biological parent or termination of parental rights to an adoption enactments.
2. I fully complied; Little Flower and privy parties could not file for a TPR then and tried to case build for 4 years after that time period given by ASFA, trying to make character flaw (and seek out imperfections) complaints that was ruled against in Santosky V Kramer that New York's guidelines give MINIMUM STANDARDS and do not expect me to be an excellent parent or even a good parent therein, but i definitely proved above and beyond in parenting skills, love, and care for my son the subject child.
3. The defendants and privy parties related to the Family Court case matter have committed abuse of the processes to use the legal system for what it is not meant for, malicious prosecution to deviate the case and manipulate its due processes to create a desired case outcome against this plaintiff from their illegal, misconduct, malpractice actions to achieve a TPR and not the return of custody that was within their disposal as it was in their disposal to other cases worse or equal to my own who may or may not have cooperated to the extent that I did but nonetheless received their child back in a procedural method. **Reference EXHIBIT N**
4. ACS funds LIttle Flower and the ACS is funded through state and federal funds which makes Little Flower an indirect recipient, a quasi, a privy party, an accessory
5. ACS is a division of the Department of Health and Human Services (HHS.gov) and thus funded. Provisions have been made for state and federal funding of child protective services. ACS in return funds its foster care agency providers and parties. **Reference EXHIBIT X**
6. On page 8, Ms. Kimundi acknowledges that ASFA mandates agencies to file a petition to terminate parental rights and thus free a child for adoption in 3 specific circumstances:
   - Where a child has remained in foster care 15 out of the most recent 22 months, calculated as starting at the time of a finding of abuse or neglect or 60 days after the temporary placement in foster care, whichever is sooner.
7. My son was placed 10-18-2013 from the hospital on a neglect by reason of mental illness allegation. All service plan services was completed by 19 months of the child being in foster care, most was completed at 11-12 months of foster care because of how long programs was in length and amount of compliances to complete which included housing and other standards that was not mentioned in the service plan report but that is MINIMUM STANDARD guidelines of the ACS, I could not get a housing or job situation in New York City so I moved nearby, 2 hours away to Philadelphia and was able to have work and housing there per the drastic change in cost of living economic standards and

capabilities. Little Flower refused to let me go to PATH Family Shelter under an ACS referral to have case progression to unsupervised visits, weekend overnight stays, trial discharge and case discharge as per procedures and policy instead they had me apply at NYCHA which was a long process of about a year in length that ultimately denied me even when I fully complied to all they asked of me. Little Flower made no efforts in my case matter similar to efforts they made in other cases or could have made in their capacity of case planning.

8. TPR was filed in the original NN docket at approximately 10-2016, 36 months in foster care. The amended TPR occurred approximately 11-2018, 61 months in foster care, and the TPR was ordered on 1-29-2020, 76 months in foster care.

9. No attempts was failed at reunification because not only do I have proofs of full compliances, that I saved everything from the case; for the case that I was able to retrieve but I also never, provenly never, committed #2 of abandoned my meaningful relationship for a period of 6 months or #3 criminal conviction of serious offenses or child related serious offenses.

10. Little Flower was required to file at/by or on 22 months foster care with reasons provided that Plaintiff never gave and not maliciously withhold earned and ordered reunification of custody goal to case build and other legal malpractices. Little Flower staff always provided false hope while they was withholding and deviating the case from what was provenly earned.

11. Plaintiff asserts that plaintiff's ability to reproduce, reproductive rights are affected by the actions of the defendants and privy parties who influenced a TPR decision with provided fabrications and false information that under TPR plaintiff cannot reproduce in the state of New York without a CPS threat of seizing the reproduced offspring.
Plaintiff contends this is an affect on her right to reproduce because of inequality to others, stigma to cause a CPS removal, lack of equal protections under the law. Reproductive rights may not be expressly or explicitly mentioned in the U.S. Constitution but they could be a protected liberty interest matter for this court to decide upon per my civil rights complaint and federal question matter, pertaining to 14th amendment liberty rights.

12. My reproductive rights have been affected individual right to plan a family, to terminate or not terminate a pregnancy has been limited and sanctioned to a deprivation that confines me to measures of contraception, pregnancy termination, and not allowed to plan a family, as per page 9 Ms. Kimundi's POint 3 assertions of what reproductive rights entail. That reproductive rights are the rights of an individual to decide whether to reproduce and have reproductive health. That includes the right to plan a family, terminate a pregnancy, use contraceptives; gain access to reproductive health services. Freely. Where as I am not free to that affect because of the illegal actions, misconducts, malpractices of defendant parties that caused violations to my 14th amendment rights and 5th amendment rights due processes clause that does not permit case tampering, fabricating, malicious prosecution, in fact no policies, legislation in this country legitimizes case tampering, fabrications, and malicious prosecution.

*In response to Ms. Kimundi's Point 4*

1. Little Flower is a quasi city agency who acts in unison and in official capacity to ACS, Family Court, under color of law (statutory FCA, SSL, DRL) quasi-governmental affect and with authority from the state court and ACS governmental agency as a subcontract with ACS a city governmental agency.
2. As specified in previous filings to this case matter, ACS was a defendant and is being amended to be a defendant. Little flower is subcontracted to ACS, and functions under color of statutes FCA, SSL, and DRI, quasi to ACS and under ACS supervisory authority that ACS mismanaged and also neglected to address and ordered me to address concerns solely to Keisha Malphurs  when complaints was made to NYS-OCFS and carried down to the NYC-OCFS regional office, ACS and Little FLower in that order, despite that Little Flower would not respond or react in their customs and practices of arbitrarily not producing a reasonable reaction to facts and issues presented to them, ignoring and refusing to address complaints.
3. My case is an individual case to not be dismissed under categorical dismissal attempts to classify it pertaining to other cases but actually brings new case law arguments that distinguish it as an individual case for federal question matters.

*In response to Ms. Kimundi's Point 5*

1. I possessed a liberty interest
2. The defendants illegal actions caused a deprivation of my parental; custodia liberty interested (per Giano v. Selsky 238 F.3d 223, 225 (2nd Cir. 2001) and Panzella v. Sposato, 863 F.3d 210, 218 (2d Cir. 2017))
3. The defendants actions to the Family Court case and case parties has caused a deprivation in ".. and bring up children." Their actions deviated both due processes, with illegal conduct to cause and create a reaction of the state interfering with the care, custody and management of their children." That deviated from established due process **methods** that do not bring in fabrications, fraud, lying and take out the context of **impartiality**. Thus substantive and procedural due processes was violated by their additional and illegal conducts (per Southerland v. City of New York 680 F.3d 127, 142 (2d Cir 2012); Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir 1999) Per general rule "... before parents may be deprived of the care, custody or management of their children without their consent, due process ordinarily a court proceeding resulting in an order permitting removal- must be accorded to them" the defendants and privy parties actions of fraud, fabrications, arbitrary responses and lack of responses of reasonable reaction to facts, complaints to do a job function resolution to matters of illegal activity, misconduct reprimanding and reformations to allow a situation to play out in accordance to rights and law and not tainted, corrupted, fabricated etc which was the actions of state actor agencies refusing to reprimand and address complaint matters per their official capacity, influenced and caused a deviation in legitimacy; impartiality of the enacted physical due process "proceedings".

56

4. The defendant parties influenced and corrupted the case in various ways that in order to abrogate constitutional privileges of the parent-child relationship to the Family Court biased, naive judge, Little Flower staff fabricated reports and parties refused all outside agency qualified and appropriate mental health and developmental health services that would provide expertise and formulate treatment services to the serious diagnosis impressions, and comprehensive, supportive, transitional services to reunification. Instead, Barbara Simon, employee of Little Flower, giving "play therapy" and no documented known treatment plans, is inadequate and underqualified to deal with the serious diagnostic impressions that was impressed of my son subject child whereas the appropriate venue of mental health and developmental services lie in clinical mental health expertise per childhood development and Office of People with Developmental Disabilities who would have reliable resources to assess and treatment persons with delays and or disabilities to have a standard of quality of living. Barbara Simon and Little Flower staff's remedy was parental alienation or as courts know the term PAS that is adverse to mental health treatment and not legally permitted in many state courts to be a resolve or reaction of any party in or around a subject child. PAS is not a known treatment standard in mental health and is adverse to the purposes of mental health.

5. No mental health professional supported to the Little Flower presumption that deprived the child of all clinical mental health services care and after displayed trauma at the prison environment, coupled with alienated to the foster parents with no ability to assert if he was being abused for wanting to visit me as he enjoyed being with me with no supportive services to adjustments and coping with changes (because of the developmental delays he suffered in and from foster care he has limited self expression like a person who has not been taught)

6. The visit suspension was solely based on the prison incident of 7-6-2017 (the request for suspension 5-18-2017 by the foster parents because he cried after visits and had some separation issues from being given to me where he was good and taken away at visit conclusions where he had separation symptoms **after**) and that the foster parents was proven as liars in attempts to create reports that alleged trauma <u>after</u> visits to get visits suspended as not in the best interest of the child, but foster care providers offered no qualified services except inadequate "Play therapy" to help him; they resolved to commit parental alienation and suspend visits. Douglas Hoffman presided over that 5-18-2017 case and ordered a 3 day home study of Sheila Johnson to attend the day before, the day of and the day after the 6-1-2017 visit to observe the behaviors of the subject-child. Sheila Johnson reported this to me and in her court report she stated no abnormal behaviors was found (that the foster parents previously reported to an expressed goal of visit suspension) **Reference EXHIBIT K**

7. It was noted that the visits were suspended due to the prison environment being traumatic per the 7-6-2017 incident where upon entry to the prison gates the subject child began to cry and was refusing to get out of the car.

8. When I was released 9-4-2019 and sought visitation, Little Flower Barbara Simon delivered unprofessional oppositional attitude letters to the court to explain why to give me any visitation after she spent time (imposing parental alienation) to adjust the subject

child to an adoption agenda that such would be adverse to their goals and planning
**Reference EXHIBIT B**. No visits was afforded to me after released from prison on
9-4-2019 and as per EXHIBIT B, Little Flower staff alleged that I did not cooperate in
2019 and 2020 which is completely false and included to prove they deliberately lied to
this court is the email and text message exchanges with Little Flower and ACS that I
compiled the file of all my certificates, reports etc under the direct of ACS after I made
complaint to NYS-OCFS about my son's well being and my innocence in 9-2019.

9. Little Flower and privy parties failed to prove the best interest of the child because Little
Flower and privy parties refused qualified services, substituted professional expertise for
their remedy to inflict PAS Parental Alienation Syndrome onto the subject child who has
suffered deterioration in and by excessive foster care. Little Flower refused qualified
services that would provide a formulated plan of clinical mental health services and
interventions, per case law given in fathers rights to put children in therapy

- In Ronald C v Sherry B the court ordered therapeutic interventions as to the best
  interest matter of the twin 10 year old estranged children who barely knew their
  father and as females felt uncomfortable around him after thrusted into visitation,
  the courts and appellates have been said to have exerted efforts to support the
  biological family and parental rights over adoption.
- In Ronald C v Sherry B the judges discretion was that "generally a child's best
  interest lies in being nurtured by both parents…" and a non custodial parent
  should have reasonable rights of visitation unless there is substantial evidence
  that visitation would be detrimental to the welfare of the child"
- The court in Ronald C v Sherry B stated that the expressed wishes of the
  children are not determinative. The biological father stayed out of their lives for
  the first 10 years to where the court said these children believe this man to be a
  stranger to them… while not physically unsafe in his care, they are emotionally
  harmed by continuing to force a relationship [with him] because he has now
  determined it is time to do so…
- The court said the twins raised legitimate matters of concern in their in camera
  interviews they were still deemed insufficient to terminate petitioners visitation
  rights
- Ronald C did not miss visitation and likely did not effort as much as I did and was
  not denied therapeutic visitation
- In the Matter of Duane FF. (Harley GG.) (2016 NY Slip Op 00227) 135 AD3d
  1093 the court held that In determining how much contact with [an incarcerated
  parent] [is] in the child's best interests, as in any other custody or visitation
  analysis, the court [is] required to consider the 'totality of the circumstances'
  (Matter of Garraway v Laforet, 68 AD3d 1192, 1194 [2009], quoting Matter of Eck
  v Eck, 33 AD3d 1082, 1083 [2006], including factors such as the age of the child,
  the lack or existence of a meaningful relationship between the parent and the
  child, the distance and travel time entailed, and the length of the parent's prison
  sentence….

- In Kenneth G. V. Aracelis A. the biological father was incarcerated for over a decade for a serious offense and the court afforded him twice- monthly supervised telephonic visitation to help "Kendolyn and her father develop a comfortable and continuing relationship that will grow over time". And by requiring Family Matters Resource Group to provide therapeutic sessions with Kendolyn, so she will receive the assistance she may need to deal with seeing her father in prison, and to deal with the host of emotions she may experience as she grows and learns to understand her father's criminal history and reasons for his lengthy incarceration. With compliance to this order, Kendolyn may as a woman in her 30s, choose to take her father by the hand and walk with him down the street."

10. Little Flower failed to prove the best interest of the child because Little Flower has refused qualified services and misrepresented "Play therapy" and Barbara Simon to the ACS and case matter. Qualified services similar to what was ordered in other case law that was not minimal on mental health services taking part in cases to be supportive towards children separated from the biological family. Barbara Simon has not formulated clinical mental health services because she is not qualified and under a clinical status, whereas clinical mental health services would provide expertise, formulated plan of clinical mental health known treatment services and interventions, clinical mental health would determine if all options to reunification of custody was exhausted and best interest is elsewhere. Little Flower left the child to no standardized treatment plans such as Cognitive Behavioral therapy, rational emotive therapy, dialectical behavioral therapy etc but determined parental alienation as the treatment plan and vulnerability to be isolated to foster parents who have expressed desire to keep custody irregardless of a court determination, have had an extreme emotional attachment that caused them to lose focus of compliance to fostering a child until with love and care until court ordered return to parent instead they prematurely created an adoptive (when they signed up for foster parenting and was not in an adoption agency per this case) environment for the child and not clarifying their status as foster mom and foster dad but as mom and dad while I was having weekly visits starting that action of theirs in 2015 and confused him because he called me mom and her spouse dad and was obviously confused about the ordeal that I explained to him as difference between foster mom and mom etc. **Reference EXHIBIT Y Rachael Hamptons 2015 campaign to hire adoption lawyer Gail Steinhagen**

11. Little Flower compromised the best interest factor by not formulating a strategy of ability to transition a child to reunification of custody with a biological parent in unison with a formulated plan from qualified mental health. The actions, for years, have been the same systematic presentation to the child that his wants do not matter, no efforts to case progress the case to unsupervised; discharge occurred which are in order: unsupervised day visits, weekend overnight stays, trial discharge and case discharge.. Weaning from foster custody with TRANSITIONAL and other supportive services and mental health services as needed. All actions of the case discharge was within the official and individual capacities of defendants and privy parties and not the fault or capacity of this

plaintiff who fully cooperated and completed all successfully or with an equivalent and within my ability to do so.

12. The plaintiff was afforded bare minimal, controlled to be a superficial, display of rights given to this plaintiff during the TPR trial proceedings that at various parts of the case record transcripts the plaintiffs assertions was never taken at face value but was treated solely as disruptions and reprimanded even when asserted while nobody else was speaking, even when asserting asking for a moment to be heard and being denied that and confined to only speak to assigned counsel and how they told me during testimony how to speak was very limiting and pretentious because some things required explanation. All of that is on the TPR trial record that began 2-19-2019 until 1-29-2020 and prior since 2-2018.

*In response to Ms. Kimundi's Point 6*

1. Factual allegations was provided and not mere legal conclusions in the miscontext provided by Ms. Kimundi's legal conclusion assertions, whereas plaintiff provided illegal conduct actions of defendants that show the pleader is entitled to relief

2. Plaintiff provides in third amended and motion of opposition the response proving fraud under federal rules and state as having occurred by defendant parties and in accordance with doctrine on proving fraud, to my ability

3. Per Ms. Kimundi's defense of Civil action criteria of malicious prosecution must involve interference with the plaintiff's person or property. Santosky v Kramer proclaims that child custody matter is far more of an interest than a property right of the biological parents, and is deemed more than a civil case with loss of money. Younger v Harris provides 3 categories that attribute civil enforcement proceedings as akin to state criminal prosecutions where as it was deemed that Family Court CPS cases are civil enforcement proceedings

4. In per Whelehan, the defendants of this action with exception for David Usdan, have not acquired or asserted any immunities.

5. Lawyer parties are not in power and authority to constitute being a state actor (under Rodriguez v Weprin) but ACS; Commissioner and defendants acting in unison to a fabricated, influenced case conclusion had official and individual capacity, authority to constitute being state actors and for the aforementioned reasons this case should not be dismissed

6. Caseparties reported endeavors and lack of reporting, recommending, case working to ACS Law Dept who acted upon information and lack of that influenced the Family Court decisions

7. The ACS party was redirected by me in complaints to review the case evidence on record and pointed out Face value exact wording and language contents whereas ACS provided arbitrary responses of refusal and malicious prosecution actions. Malicious prosecution actions are not premature. The actions of the defendants constituted cruel and unusual punishments inflicted that was in the form of deprivations, refusing to react to complaint matters, arbitrary decisions, fraud and fabrications all to manipulate the

case to their win and not allow the case to proceed in its due course to my favor after I earned the case to proceed in my favor by full cooperations and proofs to my innocence of the ACS allegations etc

8. The complaint of discrimination is in reliegious discrimination and equal protections clause value that I have been a practicing muslim since approximately 2002 and have maintained that orientation where case parties have ridiculed that conduct as weird and have treated me different than other Americans in providing me with equality in case dealings that was afforded to Americans of other beliefs.

9. The defendants, all, failed to protect the subject-child in their custody from mental health deterioration from deprivations of clinical, qualified services and not from this plaintiff who was under a 2 year no contact and the subject child still deteriorated and kept in foster care than allowed and condoned that deterioration without seeking out qualified services that I even wrote them letters in prison and emails when I was released from prison 2018-2019 telling them exactly who to look for since they had me searching for my own service plan services and advising them since case start.

*In response to Point 7 of Ms. Kimundi's motion to dismiss*

1. All the allegations herein are relevant and supportive to the federal question civil rights complaint matter cause of action litigation and is contradictory to justice and legal standard to accept and approve Ms. Kimundi's weak, baseless argument of unsubstantiated, highly prejudiced, presence of inflammatory or unfoundedness in allegations, or sweeping a cover-up victory under pretense of wasting time and judicial resources in favor of guilty by evidence standards defendant parties.

*In response to Ms. Kimundi's Point 8*

1. Plaintiff intends to number the paragraphs and practice better formal documentation tactics to conform to the Fed. R. Civ. P policies, each to a single set of circumstances herein and in amended afforded to plaintiff (third).

Wherefore, this plaintiff is seeking that Hon. Broderick does not dismiss my case and gfrants me all relief that I am eligible for and including leniencies as Pro Se litigant who doesn't have a bar license yet or been through all formal trainings.
Dated: April 15th 2020

Respectfully,

*Jessica Wrobleski*

Jessica Wrobleski, Pro Se Plaintiff
190 Henry Street 1st fl
Binghamton, N.Y. 13901
607-621-0884

61

EXHIBITS List

**EXHIBIT A - 2016 emails and exchanges**

**EXHIBIT B - 2019 emails, exchanges, reports, etc from post-release 9-4-2019 until TPR trial conclusion 1-29-2020**

**EXHIBIT C - 11-28-2013 Bryan Stuart report**

**EXHIBIT D - (compiled into EXHIBIT B for the sake of not repeating to the court what was repeated to the defendant parties) program certificates, Parenting Class book I made, 2013 Service Plan order, MHS reports and testing from CBS clinic in Philadelphia, DBT certificate and info, etc**

**EXHIBIT E - 2-3-2015 order reinstating visits, ACS Connections log record**

**EXHIBIT F - Little Flower's goal change in agency planning and not court ordered goal change**

**EXHIBIT G - signed releases of information throughout the case history**

**EXHIBIT H - 2006 evaluation report and letter offering testimony**

**EXHIBIT I - 2018-2019 complaints evidence, reports of my son's deteriorated mental health condition in 3 phases whereas Little Flower and ACS refused to give him supportive, qualified services from outside providers; including my request for OPWDD intervention (letter from OPWDD)**

**EXHIBIT J - Rothman email confirmed returning the items to me**

**EXHIBIT K - 2017 court reports from Sheila Johnson, 7-7-2017 eval, Barbara Simon's reports and 2019 diagnosis (located in EXHIBIT I of the reports of my son so as to not repeat exhibit contents to the court)**

**EXHIBIT L - prison complaints and response about teddy bear given to Sheila Johnson**

**EXHIBIT M - letters involving tele visitation and Osborne Association, prison letters proofs to compliance and reporting (ACS office of Advocacy recognized my books to my son), A.R.T letter from Venning and certificates from in prison are in 2019 EXHIBIT B**

**EXHIBIT N - ASFA of 1997** , Federal Administrative agency determinations FBI and DOJ

EXHIBIT O - 2018 letters etc and reportings to City/State, Affidavits to the Family Court, Molinoff, Albert, [OPWDD (in EXHIBIT I)]

EXHIBIT P - 1-29-2020 Termination of Parental Rights Order

EXHIBIT Q - Werchol statement and order to FCMHS not David Usdan specifically, by Douglas Hoffman

EXHIBIT R - NYC Supreme Court decision, Motion to dismiss from Chlarens Orsland and my opposition motion

EXHIBIT S - David Usdan's resume

EXHIBIT T - Alan Ravitz resume

EXHIBIT U - Younger Abstention refutation copy from 118 page submitted previous reply

EXHIBIT V - Appellate Division First Department 3-2019 decision

EXHIBIT W - City Comptroller Audit of Little Flower's funding information subcontracted to ACS

EXHIBIT X - ACS is an agency from and funded by HHS.gov the Department of Health and Human Services

EXHIBIT Y - Rachael Hughes-Hampton 2015 campaign to hire adoption lawyer Gail Steinhagen